## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASSACHUSETTS LOBSTERMEN'S ASSOCIATION, INC.<br>8 Otis Place<br>Scituate, MA 02066<br><br>Plaintiff,<br><br>v.<br><br>GINA RAIMONDO, *in her official capacity as Secretary*,<br>U.S. Department of Commerce<br>1401 Constitution Avenue, NW<br>Washington, DC 20230,<br><br>JANET COIT, *in her official capacity as Assistant Administrator*,<br>NOAA Fisheries<br>1315 East-West Highway<br>Silver Spring, MD 20910,<br><br>NATIONAL MARINE FISHERIES SERVICE,<br>1315 East-West Highway<br>Silver Spring, MD 20910<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DECLARATORY AND OTHER RELIEF** |

Plaintiff Massachusetts Lobstermen's Association, Inc. ("MLA"), as and for its Complaint against Defendants Gina Raimondo, Janet Coit, and National Marine Fisheries Services, states and alleges as follows:

1

## INTRODUCTION

1.    The Massachusetts lobster industry is essential to Massachusetts' culture, heritage, identity, and economy.

2.    The Massachusetts lobster industry is mostly comprised of small, family-owned businesses, and lobster fishing has offered a distinct way of life to generations of Massachusetts citizens.

3.    The Massachusetts lobster fishery landed nearly $120 million worth of American lobster each year (as of 2021), and participate in a culture promoting independence, self-reliance, and entrepreneurialism.

4.    The impact of the Massachusetts lobster industry extends well beyond those that actually ply the seas fishing for the product and their families. The Massachusetts lobster industry supports local onshore businesses, including restaurants, lobster dealers, seafood processors, storage facilities, vessel repair yards, marinas, and tourist shops. Many small and family-owned shored-businesses rely on the lobster industry and the revenue they provide to stay afloat.

5.    In recent years, many lobstermen and members of the MLA have also fished for Jonah Crab, a prey species that can be targeted with lobster fishing gear deployed from lobster vessels. Jonah Crab has become an important target species for Massachusetts fishers. The process of fishing for Jonah Crab is quite similar to lobstering.

6.    The illegal "Final Rule to Close the Wedge Area within the Massachusetts Restricted Area" which is the subject of this Complaint, has caused and continues to cause economic, aesthetic, cultural, and procedural injury to MLA and its' members interests in the Massachusetts lobster fishery through the imposition of illegal closures to fishing grounds.

## PARTIES

7.     Plaintiff Massachusetts Lobstermen's Association, Inc. ("MLA") is a Massachusetts non-profit corporation dedicated to the preservation of a sustainable lobster resource, and the fishermen and communities that depend on the Massachusetts lobster fishery. MLA has proactively worked to develop, and consistently supported, including having its members serve on the Atlantic Large Whale Take Reduction Team ("ALTRT"), conservation measures for the North Atlantic Right Whale based on sound science.

8.     MLA is a credible voice for the Massachusetts lobster fishery on marine resource management issues and is highly regarded by stakeholders in the health of Massachusetts marine and coastal resources.

9.     MLA brings this lawsuit on behalf of its members, who currently fish and intend to continue to fish and keep their gear in the waters subject to the "Final Rule to Close the Wedge Area within the Massachusetts Restricted Area"" that is the subject of this Complaint.

10.     MLA has been actively and diligently involved in efforts to protect the North Atlantic Right Whale population. For decades, MLA has been working with NMFS, the Massachusetts Department of Marine Fisheries, representatives of the environmental and scientific communities, and other stakeholders. MLA has been an industry leader in the development and implementation of practical management measures and harvesting practices that effectively minimize risk to North Atlantic Right Whales when they are present in waters fished by Massachusetts lobster industry participants.

11.     MLA members fish in waters subject to NMFS's 2021 Atlantic Large Whale Take Reduction Plan amendments, which were "deemed sufficient to ensure that the continued Federal and State authorizations of the American lobster and Jonah crab fisheries are in full compliance"

with the Endangered Species Act and Marine Mammal Protection Act by the Consolidated Appropriations Act of 2023, H.R. 2617.

12.     The members of the MLA who fish for, *inter alia*, lobster and Jonah crab have long recognized the importance of conservation of the North Atlantic Right Whale. Members of the MLA have partnered with research organizations, industrial groups, and state and federal authorities to mitigate risk to the North Atlantic Right Whales, even where those measures have made fishing harder economically.

13.     Indeed, members of the MLA can proudly claim to be the first in the nation to close any waters to mitigate risk to North Atlantic Right Whales, including closure of all Massachusetts state waters from Monomoy north to the New Hampshire border from February 1 to May 15th with dynamic extension, closure of Massachusetts state waters gillnet fishing from January 1 to May 15 with dynamic extension, and closure of all Other Trap Pot fishing from December 15 through April 15.

14.     Members of the MLA can also proudly claim to be the first in the nation to universally adopt use of sinking ground rope, weak line, weak inserts, and other conservation measures, including instituting mandatory use of 75% weak rope in all lobster and Other Trap Fisheries, invention of their own weak insert device, known as the "South Shore Sleeve," and instituting a 50% trap reduction in Lobster Management Area Two implemented from 2016 and 2021.

15.     MLA's leading from the front conservation and risk mitigation efforts have been successful as there is no evidence of any serious injuries or mortalities to North Atlantic Right Whales arising from Massachusetts-licensed lobster fishing gear in recent history, making Massachusetts waters a veritable safe haven for the North Atlantic Right Whale.

16.     MLA and its members derive economic, professional, aesthetic, and cultural benefits from the Massachusetts lobster and Jonah crab fishery. Defendants' promulgation of the "Final Rule to Close the Wedge Area within the Massachusetts Restricted Area, which is the subject of this Complaint, has caused and continues to cause economic, aesthetic, cultural, and procedural injury to MLA and its' members interests in the Massachusetts lobster fishery through the imposition of illegal closures to fishing grounds. MLA and MLA's members' injuries will be redressed by the relief they request, as that relief would undo the causes of those actual and threatened injuries. MLA and its members have no other adequate remedy at law.

17.     Defendant Gina Raimondo is the Secretary of the U.S. Department of Commerce, and is sued in her official capacity. Secretary Raimondo directs all business of the Department of Commerce and is the official ultimately responsible under federal law for ensuring that the actions and decisions of the Department comply with all applicable laws and regulations.

18.     Defendant Janet Coit is the Assistant Administrator of the National Oceanic and Atmospheric Administration Fisheries ("NOAA" or "NOAA Fisheries") and is sued in her official capacity. Assistant Administrator Coit has responsibility for implementing and fulfilling the agency's duties under the ESA and the MMPA, as well as the Consolidated Appropriations Act, 2023, H.R. 2617.

19.     Defendant National Marine Fisheries Service ("NMFS") is an agency within NOAA. NFMS is the agency to which the Secretary of Commerce has delegated the authority to implement regulations regarding the Magnuson-Stevens Act, the ESA, and the MMPA, as well as the Consolidated Appropriations Act, 2023, H.R. 2617.

## JURISDICTION AND VENUE

20.     The United States District Court for the District of Massachusetts has jurisdiction over this matter under 28 U.S.C. § 1331 because this case presents a federal question under the laws of the United States, including the Administrative Procedures Act and the Consolidated Appropriations Act, 2023, H.R. 2617. An actual justiciable controversy exists between Plaintiff and Defendants, and the request relief is proper under 5 U.S.C. §§ 701-706.

21.     Venue is proper in the District of Massachusetts pursuant to 28 U.S.C. § 1391 as this action is brought a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated.

## LEGAL BACKGROUND

22.     The Administrative Procedures Act ("APA") governs judicial review of federal agency actions. 5 U.S.C. §§ 701-706.

23.     Under the APA, courts "shall . . . hold unlawful and set aside agency action, findings, or conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or made "without observed of procedure required by law." *Id.* § 706(2)(A), (C), (D).

24.     The Consolidated Appropriations Act of 2023, H.R. 2617, ("CAA") included a mandate that the 2021 Atlantic Large Whale Take Reduction Plan ("ALWTRP") amendments "shall be deemed sufficient to ensure that the continued Federal and State authorizations of the American lobster and Jonah crab fisheries are in full compliance" with the Endangered Species Act and Marine Mammal Protection Act under December 31, 2028.

6

25.     The CAA requires NMFS to "promulgate new regulations for the American lobster and Jonah crab fisheries consistent with the [MMPA] and the [ESA] that tale effect by December 31, 2028, utilizing existing and innovative gear technologies, as appropriate[.]" CAA § 101(a)(1).

26.     However, the CAA also provided that the provisions of subsection(a) "shall not apply to an existing emergency rule, or any action taken to extend or make final an emergency rule that is in place on the date of enactment of this Act, affecting lobster and Jonah crab." *Id.* § 101(b).

### STATEMENT OF FACTS

**2022 Wedge Closure**

27.     On March 1, 2022, NMFS issued an "Emergency Closure for Lobster and Jonah Crab Trap/Pot Fishery Area Between Massachusetts Restricted Area and Massachusetts Restricted Area North for April 2022" ("2022 Wedge Closure") for federal waters in the following coordinates:

| MRA Wedge Area Coordinates | | |
|---|---|---|
| Point | Lat | Long |
| MRAW1 | 42°39.77′ | 70°30′ |
| MRAW2 | 42°12′ | 70°38.69′ |
| MRAW3 | 42°12′ | 70°30′ |
| MRAW4 | 42°30′ | 70°30′ |
| MRAW1 | 42°39.77′ | 70°30′ |

28.     The 2022 Wedge Closure lasted from April 1, 2022, to April 30, 2022. In explaining its closure, NMFS stated that:

> This emergency closure is being put in place to protect right whales exiting Cape Cod Bay from becoming entangled in the dense aggregations of gear that were observed in this area in April 2021. Implementing an emergency restriction to fishing with buoy lines in this area will address a critical gap in protection where there is a particularly high chance of entanglement that was not addressed in recent modifications to the Atlantic Large Whale Take Reduction Plan, while long term measures are being developed.

*See*   (https://www.fisheries.noaa.gov/bulletin/emergency-closure-lobster-and-jonah-crab-trap-pot-fishery-area-between-massachusetts).

29.    NMFS indicated that it was seeking the closure pursuant to the Marine Mammal Protection Act § 118(g) and that the "[i]implementing an emergency restriction to fishing with buoy lines in this area will address a critical gap in an area with a particularly high chance of entanglement in 2022 that was not address in recent modifications to the ALWTRP while long-term measures are being developed." (*See* https://www.fisheries.noaa.gov/action/emergency-closure-lobster-and-jonah-crab-trap-pot-fishery-area-between-massachusetts); 50 C.F.R. 229.

30.    NMFS determined that the closure was necessary because the Decision Support Tool, a statistical model NMFS developed as part of the ALTWRP (and whose underlying scientific assumptions were ruled arbitrary and capricious in *Maine Lobstermen's Ass'n v. Nat'l Marine Fisheries Serv.*, 70 F.4th 582 (D.C. Cir. 2023)), suggested that a high enough volume of Right Whales would be in the MRA and MRA North that buoys could cause entanglements.

31.    Prior to the 2022 Closure, the waters were open from January 1, 2022, to March 31, 2022.

32.    The 2022 Wedge Closure ended on May 1, 2022, and federal waters remained open for the remainder of 2022.

33.     In *Maine Lobstermen Association*, NMFS filed a Motion to Dismiss the Appeal (Doc. # 1982942) on January 24, 2023 on the grounds that the appeal was moot as NMFS would not be issuing any regulations from the ALTWRP. This motion was denied by the D.C. Circuit.

**2023 Wedge Closure**

34.     On January 31, 2023, after the passage of the CAA, NMFS announced at FR-230130-0030 that it would be initiating a new closure, to begin on February 1, 2023, and ending on April 30, 2023 ("2023 Wedge Closure").

35.     Upon information and belief, NMFS announcement of the 2023 Wedge Closure did not occur until on or about January 31, 2023 at 10:12 AM EDT or less than fourteen (14) hours before the 2023 Wedge Closure would become effective. ("NMFS's Announcement")

36.     NMFS Announcement at the eleventh hour gave affected MLA members with gear in the Wedge Closure area no effective chance to comply with the 2023 Wedge Closure.

37.     The 2023 Wedge Closure, titled "Emergency Closure for Trap/Pot Fisheries: Area Between Massachusetts State Waters and Federal Waters within the Massachusetts Restricted Area for February 1- April 30, 2023" claims to be an "extension" of the 2022 Wedge Closure.

38.     However, in a January 31, 2023 email from Marisa Trego, Coordinator of the Atlantic Whale Take Reduction Team for the NMFS Great Atlantic Region, Ms. Trego stated that NMFS "implemented a *similar* emergency rule in April 2022, and are doing so again at the request of the Commonwealth of Massachusetts." (Exhibit 1 – Declaration of Beth Casoni ("B. Casoni Decl."), Ex. A.)

39.     Further in its January 2023 ALTWRP Update, NMFS stated "We recently announced an Emergency Rule to restrict buoy lines of the MRA Wedge closure *again* this year from February through April." (Exhibit 1 – B. Casoni Decl., Ex. B.)

40.   The 2023 Wedge Closure included the exact same areas as the 2022 Wedge Closure following areas:

| MRA Wedge Area Coordinates | | |
|---|---|---|
| Point | Lat | Long |
| MRAW1 | 42°39.77′ | 70°30′ |
| MRAW2 | 42°12′ | 70°38.69′ |
| MRAW3 | 42°12′ | 70°30′ |
| MRAW4 | 42°30′ | 70°30′ |
| MRAW1 | 42°39.77′ | 70°30′ |

41.   NMFS claimed that it was able to implement the 2023 Wedge Closure under the MMPA and because the CAA §101(b) provides an exception for emergency rules.

42.   Without citing to any Congressional history or other grounds of support, NMFS determined that CAA § 101(b) "can refer only to the 2022 MRA Wedge Rule, because that is the only emergency rulemaking implemented under the MMPA, ESA, and other relevant statutes, affecting lobster and Jonah crab, to occur in the past decade." (Exhibit 1 – B. Casoni Decl., Ex. B. at 9.)

43.   Despite CAA § 101(b) not referring to the 2022 Wedge Closure in any way, NMFS further extrapolated that "the exception at § 101(b) is a specific reference to the 2022 emergency rule closing the MRA Wedge." (*Id.*)

44.   Indeed, giving away the game, NMFS asserts, again without citing to any supporting precedent, that "the emergency rulemaking provisions of MMPA [§] 118(g) allow for an

extension of existing emergency rules when conditions warrant, and the statutory language does not require an extension to follow immediately upon the expiration of the *original* emergency action." (*Id.*)

45.     NMFS thus interpreted the language of CAA § 101(b) to mean that "the continued existence of the emergency, *as opposed to the operability of the emergency rule*, is what matters for an extension of an emergency rule" (*Id.*)

46.     NMFS then asserted that "the 2022 30-day emergency rule [2022 Wedge Closure] was not in effect longer than 270 days (the statute's temporal limit), *but the same conditions exist this year to warrant an extension*." (*Id.*)

47.     In its explanatory materials regarding the 2023 Wedge Closure, many portions copied word for word from the 2022 Wedge Closure explanatory materials, NMFS further stated that "risk reduction and change in right whale co-occurrence were calculated for this emergency measure using the Decision Support Tool (DST) version 4.1.0, which is an updated version of the model that was used in the 2021 FEIS." (*Id.* at 15.)

48.     The DST is a statistical modeling tool that was created and relied on data used to support the 2021 Biological Opinion that was challenged in *Maine Lobstermen's Association*.

49.     Despite saying the DST was a different model, NMFS admitted in its own material that it used "distribution data from 2010 through September 2020" which was true for the DST in the 2021 Biological Opinion.

50.     NMFS claimed that the "emergency rule was not developed during the fisheries consultation process that culminated in the 2021 BiOp" and that the emergency rule is "not associated with the 2021 BiOp, and was not analyzed under the 2021 BiOp" despite using the

same underlying science and data in the DST for the emergency rule as for the 2021 BiOp. (*Id.* at 17-18.)

51.     Upon information and belief, NMFS attempted to obscure its reliance on the same underlying data and science because it knows that it is not permitted to promulgate new regulations for the lobster and Jonah crab fishery under the CAA, and thus has to make it seem like this is a new process, while simultaneously presenting it as an extension.

52.     Prior to issuing the 2023 Wedge Closure, NMFS did not engage in any notice and comment period regarding the 2023 Wedge Closure.

53.     Federal waters were open from May 1, 2022, until the 2023 Wedge Closure.

### 2023 Wedge Closure Litigation

54.     After NMFS announced the 2023 Wedge Closure, MLA immediately sued NMFS in the United States District Court for the District of Columbia ("District of D.C."), asserting that the 2023 Wedge Closure violated the CAA and was therefore illegal. (*See* Exhibits 2-6 (Complaint, and Memoranda in Support, Oppositions, and Reply to Motion for Preliminary Injunction, Hearing Transcript for Preliminary Injunction Hearing)).

55.     In a hearing on a requested preliminary injunction on February 16, 2023, the Court stated "I think that the plaintiffs may well have a better argument on the merits than the government. It's a close question and one that I probably need to think about more. But in the time that I have had, I think that Mr. Cragg has probably got a better reading of the way -- a better interpretation of the exception." (Ex. 6 - TRO Hr'g Tr. 30:6- 12).

56.     However, despite determining MLA was likely correct on the law, the Court denied the preliminary injunction based on its reading of D.C. Circuit precedent requiring overwhelming financial harm to meet the irreparable harm standard.

57.     Following this, NMFS refused to agree to an expedited briefing schedule and then moved to dismiss as moot the complaint once the 2023 Wedge Closure expired.

58.     On May 3, 2023, the Court granted that motion over MLA's strenuous objections grounded primarily in the argument that NMFS had affirmatively stated it was intending to make the illegal 2023 Wedge Closure a final rule and thus the termination of the wedge closure was not capable of repetition yet evading review. (See Exhibit 7 – Order Dismissing Case for Mootness.)

### D.C. Circuit Litigation

59.     Following the 2023 Wedge Closure litigation in the District of D.C., the D.C. Circuit issued its decision in *Maine Lobstermen's Ass'n v. Nat'l Marine Fisheries Serv.*, 70 F.4th 582 (D.C. Cir. 2023).

60.     In *Maine Lobstermen's Association*, the D.C. Circuit ordered the Biological Opinion vacated, the Final Rule remanded, and held that "[b]y [NMFS's] admission, it relied upon worst-case modeling that is "very likely" wrong, based upon assumptions [NMFS] concededly does not believe are accurate." *Maine Lobstermen's Ass'n*, 70 F.4th at 599.

61.     In so doing, the D.C. Circuit vacated the science underpinning the 2021 Biological Opinion and upon which NMFS's DST tool relies.

### Final Wedge Closure Rule

62.     On September 18, 2023, NMFS announced it would be "finalizing" the 2023 Wedge Closure.

63.     During the Notice and Comment period, MLA submitted a comment outlining why the Final Wedge Closure Rule would be illegal for, *inter alia*, violating the CAA and because it was

based on deficient scientific assumptions and legal reasoning deemed "egregiously wrong" by the D.C. Circuit. (See Exhibit 1 – B. Casoni Decl., Exhibit E.)

64.    Despite the CAA and the D.C. Circuit's holding in *Maine Lobstermen's Association*, NMFS marched forward with the Final Wedge Closure Rule, publishing it on February 6, 2024, with an effective date of March 8, 2024. (*Id.,* Exhibit F.)

65.    In its Final Wedge Closure Rule, NMFS expanded the area it was closing, closing the following area:

| MRA Wedge Area Coordinates | | |
|---|---|---|
| Point | Lat | Long |
| MRAW1 | 42°52.32' | 70°48.98' |
| MRAW2 | 42°52.58' | 70°43.94' |
| MRAW3 | 42°39.77' | 70°30' |
| MRAW4 | 42°30' | 69°45' |
| MRAW5 | 42°30' | 69°45' |
| MRAW6 | 41°56.5' | 69°45' |
| MRAW7 | 41°21.5' | 69°16' |
| MRAW8 | 41°15.3' | 69°57.9' |
| MRAW9 | 41°20.3' | 70°00' |
| MRAW10 | 41°40.2' | 70°00' |

14

66.     Further, NMFS repeated the same erroneous reasonings it used to justify the 2023 Wedge Closure, including:

    a.  The CAA must have meant the 2022 Wedge Closure when it referred to "emergency rule in place";

    b.  The 2022 Wedge Closure was in place as of the date of the CAA because the emergency continued after the 2022 Wedge Closure ended; and,

    c.  Using the exact same DST, with the same data from 2010-2020, and claimed this was the "best available scientific information" despite that data being ruled arbitrary and capriciously applied by the D.C. Circuit.

67.     NMFS further determined that only 26-31 vessels would be impacted with a lost revenue of $1.7-3 million over five years.

68.     NMFS dismissed the District of D.C.'s warning that the 2023 Wedge Closure was likely illegal by saying "we carefully considered these statements and determined that the present rulemaking complies with all applicable laws".

69.     Ultimately, besides expanding the boundaries, NMFS made no changes from the Proposed Rule to the Final Wedge Closure Rule.

70.     NMFS prepared an Environmental Assessment ("EA") but did not prepare an Environmental Impact Statement ("EIS") for the Final Wedge Closure Rule.

71.     NMFS claimed that it did not need to conduct any consultations with any other agencies because it had conducted an ESA Section 7 consultation in 2004, 2008, 2014, 2015, and 2021, while also disclaiming this was related to the 2021 Biological Opinion consultation process.

72. On January 9, 2024, the Center for Coastal Studies conducted an aerial surveillance of the Wedge and sighted no Right Whales. (Exhibit 1 – B. Casoni Decl., Exhibit G).

15

73.     MLA's members, including Mr. Eric Meschino, a member of MLA's Board of Delegates, intended to fish in the Wedge Area but will be prevented from doing so if the Final Wedge Closure Rule remains extant.

74.     This will cost MLA members anticipated earnings and degrade their ability to continue to operate as commercial lobster fishermen.

75.     If the permanent Wedge Closure is lifted, MLA's members will be able to fish in the closed areas and obtain a likely profit by doing so.

**COUNT I**

**Violation of the APA and CAA – Illegal Wedge Closure**

76.     Plaintiff re-alleges and incorporates, as if fully set forth herein, the foregoing paragraphs.

77.     NMFS's Final Wedge Closure Rule is a final agency action within the meaning of the APA.

78.     NMFS's Final Wedge Closure Rule violates the APA and CAA because it is not an extension of an emergency rule existing at the time of the CAA's passage, but rather is the finalization of a new regulation or administrative action to bring the lobster industry into compliance with the ESA and MMPA, despite Congress through the CAA mandating that the lobster industry is in full compliance with the ESA and MMPA and precluding the issuance of new regulations until 2028.

79.     CAA § 101(b) only exempts extensions of existing emergency rules, but, because the 2022 Closure ended on May 1, 2022, the 2022 emergency rule expired on that date and there was no existing emergency rule in existence on February 1, 2023 for NMFS to extend. Therefore, the 2023 Wedge Closure was a new emergency rule and was illegal under the CAA and cannot be finalized.

80.     Further, NMFS's reliance on almost verbatim language and reliance on the DST which used the same science and data as used for the 2022 closure shows the 2023 Wedge closure was nothing more than a repeated, but new, rule from the last emergency closure, and therefore the Final Wedge Closure Rule is a finalization of a new rule.

81.     Therefore, NMFS's Final Wedge Closure Rule is arbitrary, capricious, an abuse of discretion, and not in accordance with the CAA, in violation of the APA. 5 U.S.C. § 706(2)(A).

## COUNT II

### Violation of the APA and CAA – Illegal Expansion of the Wedge Closure

82.     Plaintiff re-alleges and incorporates, as if fully set forth herein, the foregoing paragraphs.

83.     NMFS's Final Wedge Closure Rule is a final agency action within the meaning of the APA.

84.     NMFS's Final Wedge Closure Rule violates the APA and CAA because, even if NMFS was allowed to promulgate the 2023 Wedge Closure as an "extension" of the 2022 Wedge Closure, it had no right to expand the Wedge Closure beyond the 2022 boundaries when "finalizing" the rule.

85.     If the 2023 Wedge Closure can be "finalized", the permanent Wedge Closure must be limited to the boundaries of the 2023 Wedge Closure.

86.     Therefore, NMFS's Final Wedge Closure Rule is arbitrary, capricious, an abuse of discretion, and not in accordance with the CAA, in violation of the APA. 5 U.S.C. § 706(2)(A).

## COUNT III

### Violation of the APA/MMPA/ESA – Arbitrary and Capricious Use of Flawed and Incorrect Data Instead of the Best Scientific and Commercial Data Available

87.     Plaintiff re-alleges and incorporates, as if fully set forth herein, the foregoing paragraphs.

88.     In evaluating the effects of the action, NMFS must use the "best scientific and commercial data" when developing the Final Rule. 16 U.S.C. § 1536(a)(2).

89.     As set forth above, NMFS relied on the DST to justify its Final Wedge Closure Rule, but the DST itself relies on scientific assumptions ruled arbitrary and capricious by the D.C. Circuit in *Maine Lobstermen's Association*.

90.     NMFS's failure to rely on, or properly apply, the best available scientific and commercial data, along with its erroneous and unscientific assumptions, caused NMFS to overestimate the risk whales face and to overestimate the benefit to the whales from the Final Rule.

91.     NMFS's actions violate its obligation to evaluate the environmental baseline and the reasonably certain effects of the lobster fishery, in violation of the ESA and the APA.

92.     NMFS's Final Rule is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, in violation of the APA. 5 U.S.C. § 706(2)(A), (C), (D).

## COUNT IV

### Violation of the APA – Failure to Conduct Adequate Financial Impact Calculations Under the Regulatory Flexibility Act

93.     Plaintiff re-alleges and incorporates, as if fully set forth herein, the foregoing paragraphs.

94.     NMFS is required to consider the financial impact of its regulations when a proposed rule would impose a significant economic impact on a substantial number of small entities.

95.     The Final Rule will have a substantial impact on Plaintiff and its members.

96.     While NMFS claimed to have determined the financial impact of its Final Rule, its calculations are woefully inadequate and significantly underestimated the true impact of the Final Rule.

97.     NMFS's Final Regulatory Flexibility Analysis failed to consider necessary science and data to reach its conclusions, in violation of the APA.

98.     NMFS's Final Regulatory Flexibility Analysis failed to include the necessary statements, summaries, and descriptions required under the Regulatory Flexibility Act and the APA and did not adequately consider steps to minimize the significant economic impact on small entities.

99.     NMFS's Final Rule is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, in violation of the APA. 5 U.S.C. § 706(2)(A), (C), (D).

### COUNT V

**Violation of the APA  – Failure to Create an Environmental Impact Statement Pursuant to the NEPA Or Consider Reasonable Alternatives**

100.     Plaintiff re-alleges and incorporates, as if fully set forth herein, the foregoing paragraphs.

101.     The National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4332, requires federal agencies like NMFS to "take a 'hard look' at environmental consequences" of major federal actions and to prepare an Environmental Impact Statement for the same when they significantly affect the quality of the human environment. *Id.* at § 4332(C).

102.     An EIS must examine "(i) the environmental impact of the proposed action, (ii) any adverse environmental effects which cannot be avoided should the proposal be implemented, (iii) alternatives to the proposed action, (iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity, and (v) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented." *Id.*

103.     NMFS only conducted an EA, despite conducting an EIS for the 2021 Biological Opinion and Final Rule.

104.     The Final Wedge Closure Rule will and has significantly affected the quality of the human environment.

105.    Therefore, NMFS was required to conduct an EIS and its failure to do so was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, in violation of the APA. 5 U.S.C. § 706(2)(A), (C), (D).

106.    Alternatively, if NMFS is permitted to only issue an EA, it was required to consider reasonable alternatives.

107.    NMFS failed to do so.

108.    Therefore, the Final Rule is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, in violation of the APA. 5 U.S.C. § 706(2)(A), (C), (D).

## COUNT VI

### Violation of MMPA – Failure to Consult with Necessary Agencies

109.    Plaintiff re-alleges and incorporates, as if fully set forth herein, the foregoing paragraphs.

110.    The MMPA requires NMFS to consult with affected agencies prior to issuing regulations that affect those agencies' operations.

111.    The Final Rule directly impacts the United States Coast Guard and other U.S. agencies by adding additional enforcement obligations to them.

112.    NMFS did not consult with the United States Coast Guard or other necessary agencies prior to promulgating the Final Rule, in violation of the MMPA and ESA.

113.    Therefore, NMFS's promulgation of the Final Rule was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, in violation of the APA. 5 U.S.C. § 706(2)(A), (C), (D).

## COUNT VI

### Violation of the Non-Delegation/Major Questions Doctrine

114.    Plaintiff re-alleges and incorporates, as if fully set forth herein, the foregoing paragraphs.

115.    Agencies cannot promulgate rulemakings with "vast economic and political significance" absent clear delegation of authority from Congress. *West Virginia v. EPA*, 142 S. Ct. 2587, 2605 (2022).

116.    The Final Wedge Closure Rule has vast economic and political significance because it will significantly disrupt and harm the lobster fishery, with corresponding effects on the thousands of communities that rely on those industry.

117.    Thus, the Final Rule cannot be promulgated absent a clear delegation of authority from Congress.

118.    There is no clear delegation of authority, instead the CAA specifically takes away NMFS's authority to close the Wedge Area until 2028.

119.    Therefore, NMFS's promulgation of the Final Wedge Closure Rule was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, in violation of the APA. 5 U.S.C. § 706(2)(A), (C), (D).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for Judgment as follows:

1.    Declare that NMFS's Wedge Closure is arbitrary, capricious, an abuse of discretion, and not in accordance with the law, in violation of the APA;

2.    Declare that NMFS is in violation of the Consolidation Appropriations Act of 2023, H.R. 2617, § 101(a);

3.    Declare that NMFS is in violation of the Marine Mammal Protection Act and the Magnuson-Stevens Act;

4.    Declare that NMFS's Final Rule violates the Major Question Doctrine;

5. Restrain and Enjoin NMFS from enacting and enforcing the Final Wedge Closure Rule in 2024 and beyond;

6. Issue a stay, pursuant to 5 U.S.C. § 705, of the Wedge Closure;

7. Vacate NMFS's Final Wedge Closure Rule;

8. For all expenses, costs and disbursements, and reasonable attorney's fees as allowed by law;

9. Such other and further relief the Court deems just and equitable.

ECKLAND & BLANDO LLP

Dated: February 9, 2024                 /s/SAMUEL P. BLATCHLEY
                                        Samuel P. Blatchley, Esq. (BBO #670232)
                                        22 Boston Wharf Road, 7th Floor
                                        Boston, MA 02210
                                        (612) 236-0170
                                        sblatchley@ecklandblando.com

                                        Daniel J. Cragg, Esq.* (MN #389888)
                                        Robert T. Dube Jr., Esq.* (MN #401597)
                                        10 South Fifth St., Suite 800
                                        Minneapolis, MN 55402
                                        (612) 236-0160
                                        dcragg@ecklandblando.com
                                        rdube@ecklandblando.com

                                        *pro hac vice application pending

                                        Counsel for Plaintiff Massachusetts
                                        Lobstermen's Association, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on February 9, 2024, a copy of the foregoing was filed through the CM/ECF system, and it is available for viewing and downloading from the CM/ECF system such that all appearing counsel have been served with this document by electronic means.

                                        /s/SAMUEL P. BLATCHLEY