UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 1:24−cv−10332−WGY

MASSACHUSETTS LOBSTERMEN'S ASSOCIATION, INC. *as Plaintiff*

v.

NATIONAL MARINE FISHERIES SERVICE *as Defendant*

**5 March 2024**

---

THE NORTHERN RIGHT WHALE & AMICUS BALAENAE RICHARD MAXIMUS STRAHAN'S SUPPLEMENTAL AMICUS CURIAE BRIEF IN SUPPORT OF ITS GRANTING THE PLAINTIFF'S TRO AND OTHER EMERGENCY RELIEF

---

Richard Maximus Strahan, as AMICUS BALAENAE, SPEAKS:

I and the Northern Right Whale REQUESTS that whether its grants the Plaintiff's requested relief that it make a declaratory ruling on NMFS' evidence —

1. There is no evidence by NMFS establishing that it is *more* likely that a Right Whale will get caught in lobsterpot gear in the MRA Wedge Area during February - April when fishing activity is at its lowest each year than in the Summer and Fall months when fishing activity is at its highest.

2. NMFS has supplied no proof to justify its 2024 MRA Regulation in which it conducted an adequate scientific assessment that established a likelihood and probability of a Right Whale getting caught by lobsterpot gear deployed in the MRA Wedge Area in February-April.



*Right Whale Killed by Fall 2023 Entanglement by NMFS' GOM Fishing Activity*"

NMFS 2024 MRA Regulation which is at issue in the instant action is wholly based on the factual analysis and interpretation of its duties under the ESA that were rejected by the 2023 decision in *Maine Lobstermen's Ass'n v. Nat'l Marine Fisheries Serv.*, 70 F.4th 582, 593 (D.C. Cir. 2023). The DC Circuit vacated NMFS 2021 ESA biological opinion ("NMFS BioOp") for its Gulf of Maine licensing of commercial lobsterpot fishing ("GOM Fishing Activity"). The entire legal reasoning and factual assumptions that NMFS used to justify NMFS reasons for closing the "wedge" area adjacent to it Massachusetts Restricted Area ("MRA Wedge Area") are the very ones in it used in NMFS BioOp that the DC Circuit rejected and used to vacate NMFS' Bio Op.

*Maine Lobstermen's Association* found that NMFS making a regulatory decision based on a worst case assumptions and relying on a "precautionary approach" favor the Right Whale was wrong and contrary to the ESA statute in 2024 —

> "The Service must strive to resolve or characterize the uncertainty through accepted scientific techniques, not jump to a substantive presumption that distorts the analysis of effects and creates false positives. When the Service applies a substantive presumption to distort the analysis, the public can have no confidence that "economic dislocation" is needed to protect a species and is not the result of "speculation or surmise" by overly zealous agency officials. Spear, 520 U.S. at 176–77."

And again later —

> "Here, the Service announced at the outset that when it made assumptions about the known unknowns, it would "generally select the value that would lead to conclusions of higher, rather than lower, risk to endangered or threatened species." All of the assumptions the Service made are thus tainted by the presumption in favor of the species. Some of the assumptions the Service made along the way are quite important—as we have explained, the Service ultimately concluded the lobster and Jonah crab federal fisher- ies kill 46 whale deaths per decade, a staggering departure from the two documented deaths known to have originated in all U.S. fisheries over a period of nine years."

And finally —

> "We have no way of knowing how the Service would have made this discretionary judgment had it not applied a general presumption in favor of the species, so we cannot conclude the error was harmless. "To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency." *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)."

As the DC Circuit rejected NMFS failure to rely on a "best scientifically available"

standard required under the ESA, the Court should rejects the 2024 MRA Regulation at issue for the same reasons. It is based on "hand waiving" based factual claims that NMFS maliciously advances to deflect the Court from the reality that NMFS the threat to Right Whales from NMFS GOM Lobsterpot Fishery is in the Summer and Fall months. NMFS is maliciously using the 2024 MRA Regulation to allow it with getting away with NOT similarly restraining GOM Fishing Activity in the Summer and Fall to prevent the imminent extinction of this species of whale.

The factual reality is that GOM Fishing Activity is an order of magnitude higher in the Summer and Fall and as well as representing the greates threat of cathing and killing Right Whales.

I. *NMFS and the MLA's ("the Parties") Violation of 16 USC § 1538(a and g): The Parties Violation of the ESA Section 9(a) Prohibitions Against the Taking of Endangered Species of Whales Pursuant to their Participation in the GOM Fishing Activity.*

The Parties are confederates working to concert to implement, manage and operate a coordinated and singular lobsterpot fishing industry in the Gulf of Maine ("GOM Fishing Activity"). The GOM Fishing Activity since 1973 routinely catches many Right Whales each year resulting in the caught whales becoming injured and then killed. Whales experiencing non-lethal injuries that are not immediately killed continue to suffer horribly as the gear twists and turns on their bodies cutting through their flesh, sawing their way through their flipper bones and the backbone underlying the peduncle juncture between their torso and tail.

The GOM Fishing Activity by annually deploying about a million lobsterpot trawls in the ESA listed designated critical habitat for the Northern Right Whale, has altered that habitat in a manner that kills and injures Right Whales by preventing their feeding and the reproduction of individual Right Whales. The deployed pots and trawl lines by adversely alter the Right Whales designed listed critical habitat in the GOM leads to the entangled Whale's death from being impaired in obtaining nutrition and destroys female whale ability to breed at all or at the optimal interval of every three years. The GOM Fishing Activity catches all manner of endangered marine wildlife including members of other endangered whale species including Fin Whales, Blue Whales, and Sei Whales. Additionally, Humpback Whales are repeatedly get cut and suffer horribly. Many Humpback Whales have their tails literally fall off after the gear's ropes wrap tightly around the whale's peduncle cutting off the blood supply to its tail. The whale's tail

literally dies on its own, gangrene then sets and eventually the dead rotten flesh of the tail separates from the whale's body and falls away. The whale's eventually dies from not being able to feed as it no longer can keep up with the other migrating Humpback Whales.

NMFS refuses to enforce the ESA's § 9 take prohibitions against its licensed fishermen or itself in conducting the GOM Fishing Activity The ESA imposes a mandatory and nondiscretionary duty on NMFS to enforce the take prohibitions of the ESA's § 9. At a minimum this must be seen as citing any fishermen whose gear catches a Right Whale to put the "stick" to them to encourage them to figure out on their own how to do lobsterpot fishing without catching any whales. Instead, NMFS employees have stated that NMFS does not consider fishermen to have done nothing wrong when a whale gets caught in its fishing gear. To NMFS the catching of an endangered whale in its licensed fishing gear is simple act of "by-catch" and has the same legal status as a under sized caught lobster that needs "only to be tossed overboard" and not landed and sold.

The Parties' GOM Fishing Activity is a singular event conducted by a specific and limited number of individuals, operating under the same rules and in an identical manner by these individuals. They are all licensed and regulated in a coordinated manner by NMFS and state & federal fishing agencies in compliance with NMFS regulations. The overall protocol the Parties GOM Fishing Activity operates under is originated as a joint effort by NMFS and coastal state governments though the Atlantic States Marine Fisheries Commission which is a private compact authorized by the Congress and not a federal or state agency.

The GOM Fishing Activity itself is an activity that is a *per se* violator of the ESA's Section 9 statutory prohibitions against the taking of Right Whales and other ESA Listed Species of whales. Any NMFS licensed fisher who deploys lobsterpot gear in Right Whale critical habitat in the Gulf of Maine violates the ESA § 9 take prohibition by its joint participation in the GOM Fishing Activity.

NMFS' recently promulgated regulation 50 CMR 229.32(f) under 16 USC § 1387 of the MMPA to amend its Atlantic Large Whale Take Reduction Plan ("ALWTRP") to include a later winter/early spring seasonal ban on GOM Fishing Activity in a specific area off the Massachusetts coast. NMFS refers to as "Massachusetts Restricted Area Wedge" (henceforth called the "MRA Wedge Area") and the regulation makes the seasonal ban permanent ("2024

MRA Regulation"). **FN¹** MRA Wedge Area was an unprotected gap between NMFS' MRA and Massachusetts' own area of seasonal restriction of state licensed lobsterpot fishing. The 2024 MRA Regulation made the closure permanent.

NMFS is WRONG in claim that the probability is highest between February-April in the MRA Wedge Area for Right Whales getting caught there by lobsterpot gear. This said false claim, is sole justification for imposing the 2024 MRA Regulation. The truth is that during Summer & Fall months is when the Right Whales are most likely to be caught in lobsterpot gear in the GOM. Most historical sightings of newly entangled Right Whales in the GOM occur during the Fall and Summer months.

The 2024 MRA Regulation violates the ESA § 9 take prohibitions by creating a "safe harbor" to engage in lobsterpot fishing in the MRA Wedge Area most of the year when Right Whales are there and there is more intense lobsterpot fishing in the Summer and Fall months than in February – April when the regulation imposes its closure. NMFS is maliciously seeking to have the 2024 MRA Regulation viewed narrowly as only limiting takings but its immunizing any taking in the Wedge Area of whales by its GOM Fishing Activity for the rest of the year.

The 2024 MRA Regulation will be used by Massachusetts, Maine, and NMFS to claim that the overall taking of the GOM Fishing Activity was lessened and therefore that their lobsterpot fishing activity should not be restrained as much during Summer and Fall months. should not be further restrained during summer months which further imperils the Right Whale.

The Parties will never on their own volition stop they're prohibited taking of the Right Whale while conducting and participating in the GOM Fishing Activity. Unless the Court permanently enjoins their further GOM Fishing Activity, the Northern Right Whale will be wiped out by them and the GOM Fishing Activity by 2040.

II.        *NMFS Violation of Administrative Procedures Act: NMFS' 2024 MRA Regulation*

---

[1] See 89 Federal Register 8333 (7 February 2024): "NMFS is amending the Atlantic Large Whale Take Reduction Plan (Plan) to expand the boundaries of the seasonal Massachusetts Restricted Area (MRA) to include the wedge between State and Federal waters known as the Massachusetts Restricted Area Wedge (MRA Wedge Area). The MRA Wedge Area was originally subject to only an emergency seasonal closure to trap/pot fishing gear by emergency rulemaking in 2022 and 2023 to prevent the immediate risk to the North Atlantic right whale (Eubalaena glacialis, right whale) of mortality and serious injury caused by entanglement in fixed-gear buoy lines."

*is Arbitrary and Capricious.*

The APA § 706(2)(A) directs courts to invalidate agency regulations found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." NMFS 2024 MRA Regulation is both arbitrary and capricious. First:

NMFS in promulgating this regulation had no scientific assessment demonstrating that the probability of a Right Whale getting caught in its GOM Fishing Activity during February-April in any given year is higher than in any other month of the year. There is no incident of any Right Whale getting caught in lobsterpot gear in the MRA Wedge Area or even sighted entangled in this area. The reality is the most likely month of the year for the Right Whales to get caught by its GOM Fishing Activity is in the Summer and Fall months of any year.

Upon information and belief NMFS adopted the 2024 MRA Regulation to benefit the plaintiff MLA in being able to conduct its part of the GOM Fishing Activity without ESA enforcement interference. The 2024 MRA Regulation is a deliberate "red herring" by NMFS to misdirect the GOM Fishing Activity's catching of Right Whales from the Summer month to the later winter months. **FN²** It relies on false propositions to divert the possible enforcement of the ESA against the GOM Fishing Activity during the Summer & Fall months when fishing is most profitable to the Winter months when historically there is very little lobsterpot fishing activity in the GOM.

Further, because of the MRA Wedge Area closure NMFS will arbitrarily and capriciously claim that the closure lowers the probability of the entire GOM Fishing Activity to catch a Right Whale and will then use this claim to impose LESS restriction than NMFS might have been so compelled on lobsterpot fishing in the summer months when the threat of lobsterpot catching whales is the greatest. This lessening of possible restraint will mean a likely increase of the number of caught Right Whales by the GOM Fishing Activity over what would be caught if the regulation was never adopted, and NMFS were instead coerced into restraining GOM Fishing Activity in the

---

² Wikipedia: "A **Red Herring** is an informal fallacy, the red herring falls into a broad class of relevance fallacies. Unlike the straw man, which involves a distortion of the other party's position,[4] the red herring is a seemingly plausible, though ultimately irrelevant, diversionary tactic.[5] According to the Oxford English Dictionary, a red herring may be intentional or unintentional; it is not necessarily a conscious intent to mislead."

Summer and Fall when the probability of its catching Right Whales is the highest.

III.  *NMFS Violation of Marine Mammal Protection Act, APA, and ESA: NMFS violation of both the ESA and MMPA in adopting MRA Wedge Regulation or any MMPA § 1387 regulation to enforce a take reduction plan ("TRP") for the Right Whale that allows its continued prohibited taking.*

The ESA requires where its protection of a listed species of whale is at issue that the provisions of the MMPA will prevail if they are more protective. **FN[3]** This proviso allows the Intervenor to prosecute NMFS for violating the MMPA's § 1372 take prohibitions or any other in the instant action since he is prosecuting NMFS for its ESA § 9 prohibited takings of ESA endangered whale species. He is claiming that NMFS is violation of the MMPA's § 1972 take prohibitions by its licensing and regulating its GOM Fishing Activity in the MRA Wedge Area for most of the year. **FN[4]**

The ESA § 9 and MMPA § 1372 prohibitions against taking the Right Whale and other ESA Listed Species of whales as a matter of law strips NMFS of any authority under any other statute to issue fishing licenses to participate in the GOM Fishing Activity  Similarly NMFS loses any authority under MMPA § 1387 to issue any regulation to implement a TRP when the implemented regulation does not completely stop consequential prohibited takings of Right Whales from  NMFS' permitting the GOM Fishing Activity.

It the past and current practice of NMFS not to enforce either the ESA's § 9 and/or the MMPA's § 1972 take prohibitions against any federal or state licensed fisherman participating in the GOM Fishing Activity.  Historically, if a fisherman's gear catches, kills, or otherwise illegally takes a Right Whale it receives no punishment from NMFS even a modest fine. Instead, NMFS has adopted a policy of only enforcing fishing regulation and TRP regulations, like the MRA Area Regulations. If a fisherman is unlucky and its gear is discovered by NMFS to have caught

---

[3] 16 U.S. Code § 1543: "Except as otherwise provided in this chapter, no provision of this chapter shall take precedence over any more restrictive conflicting provision of the Marine Mammal Protection Act of 1972 [16 U.S.C. 1361 et seq.]."

[4] Strahan is seeking to have the Court find NMFS liable for violating the MMPA's § 1372 prohibition on takings whales pursuant to its fishing activities similarly to it finding the state agency defendant in <u>Strahan v. Coxe</u> for violating the ESA § 9 take prohibitions by its licensing fishing activity that caught and killed endangered whales.

and/or killed a Right Whale, it is not fined or prosecuted if its gear is TRP regulation compliant.

In 1988, the District of Columbia Circuit Court of Appeals issued its decision in 839 F.2d 795 United States Court of Appeals, District of Columbia Circuit in *Kokechik vs. the Department of Commerce*. **FN[5]** In *Kokechik* the court vacated s NMFS fishing permit and an accompanying incidental take permit allowing it to take as by-catch numerous non-endangered marine mammals. These permits were vacated because it was discovered the permitted fishing activity also took endangered marine mammals that the ITP did not authorize. This set a precedent requiring NMFS to have to issue an ITP for all possible marine mammals that might be taken by a fishery.

> *Kokechik* at 802 court ruled —
>
> "The Secretary has no authority, by regulation or any other action, to issue a permit that allows conduct prohibited by that Act. Nonetheless, the Secretary chose to disregard these incidental takings as "negligible," an undefined and ambiguous standard at best. The MMPA, however, does not provide for a "negligible impact" exception to its permitting requirements where incidental takings are not merely a remote possibility but a certainty."

Under *Kokechik*, NMFS has no lawful authority to license GOM Fishing Activity or any regulation enforcing a MMPA § 1387 take reduction plan without first eliminating any reasonable likelihood that it will not catch, kill, and otherwise take Right Whales and/or other endangered whales or otherwise violate the MMPA's ¶1972 or the ESA § 9 take prohibitions.

The MRA Area Regulation along — along with its practice of not enforcing statutory taking prohibitions for fishermen's by-catch of endangered whales — has NMFS establishing a "safe harbor" for its licensed fishers when they catch Right Whales in the Summer and Fall in the MRA Wedge Area it will be without consequence. The making of "safe harbors" by NMFS is permitting a taking of Right Whale without any allowed authorization under the ESA & MMPA when the threat of a whale getting caught by the GOM Fishing Activity is the greatest.  Under NMFS "safe harbor" scheme, its token limiting GOM Fishing Activity in the early part of the year allows these licensed fishers to evade fishing restrictions in the Fall and Summer so they can fish more even if that catches and kills more Right Whales

---

[5] *Kokechik vs. the Department of Commerce*, 839 F.2d 795 (D.C. Cir. 1988)

NMFS grant of a "safe harbor" vis issuing its 2024 MRA Regulation allows its licensed fishermen to catch, kill and otherwise take Right Whales in violation of the MMPA's and ESA's prohibitions against taking these whales constitutes a de facto and unlawful permitted taking of right Whales and other endangered whales in violation of the ESA's § 9 and MMPA's § 1372 taking prohibitions.

NMFS was created in 1970 for the exclusive purpose of promoting the commercial exploitation and harvesting of marine wildlife. Its decision-making infrastructure is dominated under statutory requirements by the by the marine fishing industry. NMFS now functions to implement fisheries management plans developed and written by other governance institutions: 1) Regional fisheries management counsels established by Magnuson-Stevens Fishery Conservation and Management Act and 2) the Atlantic States Marine Fisheries Cooperation Management Act. **FN[6]** both of which are dominated by the marine fisheries industry.  Its duties getting assigned by NOAA as federal agency to be the superintendent of ESA enforcement completely dwarfed by its lawful and political commitment to promote commercial fishing.

Burdened by this conflict of competing purposes, NMFS has chosen to "manage to extinction" the Right Whale instead of "managing it to recovery" from its endangered species status.  In so doing NMFS chose not to enforce the ESA and MMPA take prohibitions against the marine fishing industry but to do the opposite. It chooses to encourage the extinction of the Northern Right Whale species to eliminate the legal threat it represents to the marine fishing industry.

NMFS evades implementing any effective measures to eliminate anthropogenic taking of Right Whales and/or to increase birthing rates among female Right Whales. Instead, it hides behind the lesser protective standards implemented by MMPA take reduction plans and only TRP plans that allow more takings of the Whale to go on for years. This refusal to end the Right Whale getting caught, killed and/or injured by the GOM Fishing Activity has now mortally wounded the Whale. These continued deaths and injuries from entanglement in fishing gear triggered the commencing of a crash of the Right Whales population in 2010 that will lead to its inevitable extinction by 2040.

---

[6] 16 USC §§ 1901 et seq. & 16 USC §§ 5101 et seq.

Without a court enjoining the GOM Fishing Activity year-round in the MRA Wedge Area Right Whales will continue being caught and killed by the GOM Fishing Activity in the MRA Wedge Area during the Summer and Fall months as a prohibited authorized taking by NMFS.

## Summary

\JUST SAY NO TO WINGO & NMFS LIES AND
SAVE THE WHALE FROM EXTINCTION!

BY:

/s/ Richard Maximus Strahan
_____
Richard Maximus Strahan
Chief Science Officer
Calm Earth Corporation
1 Brickyard Square, Suite 14 PMB 227
Epping NH 30402
Rightywhale@gmail.com
617-817-4402

*Vir Rei Publicae Necessarius Est*

I certify that a copy of this document has been served TODAY on each of the Parties attorney of record by the ECF filing system. /s/ Richard Maximus Strahan