## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASSACHUSETTS LOBSTERMEN'S ASSOCIATION, INC. | Case No. 1:24-cv-10332 (WGY) |
| Plaintiff, | **PLAINTIFF'S TRIAL BRIEF** |
| v. | |
| GINA RAIMONDO, *in her official capacity as Secretary*, *et al*., | |
| Defendants. | |

Plaintiff Massachusetts Lobstermen's Association, Inc., by and through its undersigned counsel, pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure, hereby submits its Trial Brief against Defendants Gina Raimondo, Janet Coit, and National Marine Fisheries, discussing only additional issues raised by the Court in its March 7, 2024 hearing.

## <u>INTRODUCTION</u>

The posture of this action is a Fed. R. Civ. P. 65(a)(2) consolidation of MLA's motion for preliminary injunction into a trial on the merits of its Counts I-III of its Complaint, wherein MLA alleges that Defendants violated the Consolidated Appropriations Act, 2023 § 101(b) by promulgating and attempting to finalize the 2023 Wedge Closure into the Final Wedge Closure Rule against the specific prohibition of Congress and in reliance on legally infirm scientific assumptions.[1] MLA's previous memorandum in support [Dkt. No. 13] and reply memorandum

---

[1] This Court provided indisputably clear and unambiguous notice that it would be consolidating consideration of a preliminary injunction into a trial on the merits at the March 7, 2024 hearing wherein it not only announced said action, but engaged at length with counsel for Defendants to explain what the consolidated trial would address, including Counts I-III of Plaintiff's Complaint. *Lamex Foods, Inc. v. Audeliz Lebron Corp.*, 646 F.3d 100, 106–07 (1st Cir. 2011). Neither party objected to this consolidation. *K–Mart Corp. v. Oriental Plaza, Inc.*, 875

[Dkt. No. 28] establish in detail why MLA prevails on the merits of its claims, has suffered irreparable harm, and the balance of harms support an injunction.[2] This brief is limited to setting forth the standard for permanent injunction and establishing why Defendants are not entitled to *Chevron* deference.

## **FACTS**

The facts being well established in MLA's Complaint and the parties' (and amici's) briefing to date, only the text of the CAA is relevant for this particular brief.

CAA § 101(a) provides:

> IN GENERAL.—Notwithstanding any other provision of law except as provided in subsection (b), for the period beginning on the date of enactment of this Act and ending on December 31, 2028, the Final Rule amending the regulations implementing the Atlantic Large Whale Take Reduction Plan (86 Fed. Reg. 51970) shall be deemed sufficient to ensure that the continued Federal and State authorizations of the American lobster and Jonah crab fisheries are in full compliance with the Marine Mammal Protection Act of 1972 (16 U.S.C. 1361 et seq.) and the Endangered Species Act of 1973 (16 U.S.C. 1531 et seq.). The National Marine Fisheries Service shall— (1) throughout the period described in the preceding sentence, in consultation with affected States and fishing industry participants, promote the innovation and adoption of gear technologies in the fisheries described in the preceding sentence, in order to implement additional whale protection measures by December 31,

---

F.2d 907, 913 (1st Cir. 1989). The trial will not address or resolve the merits of MLA's remaining counts and thus MLA reserves argument for them. *Francisco Sanchez v. Esso Standard Oil Co.*, 572 F.3d 1, 15 (1st Cir. 2009).

[2] NMFS admitted that it relied on the Diagnostic Support Tool to support the Final Wedge Closure Rule. [Docket No. 22 (Opposition Brief) at 16 n.10.] Because the underlying science supporting the DST was ruled illegal in *Maine Lobstermen's Ass'n v. Nat'l Marine Fisheries Serv.*, 70 F.4th 582 (D.C. Cir. 2023), NMFS bears the burden of establishing, on the record, why its use of the DST is reasoned and not arbitrary and capricious. *Dubois v. U.S. Dep't of Agric.*, 102 F.3d 1273, 1285 (1st Cir. 1996) (quoting *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 378 (1989) ("Only by carefully reviewing the record and satisfying [itself] that the agency has made a reasoned decision can the court ensure that agency decisions are founded on a reasoned evaluation of the relevant factors.") (internal quotations omitted)).

NMFS must further establish exactly how it changed the DST in light of *Maine Lobstermen's Ass'n*, given that the record shows NMFS relied on the same DST data for the 2023 Wedge Closure which predates *Maine Lobstermen's Ass'n,* to justify the Final Wedge Closure Rule. (Record at 04767-5016.) NMFs must also provide a reasoned explanation for how much its decision to issue the Final Wedge Closure Rule relied on the DST. *Dubois*, 102 F.3d at 1285 ("even if the agency's actual decision was a reasoned one, the EIS is insufficient if it does not properly discuss the required issues.") (citing *Grazing Fields Farm v. Goldschmidt*, 626 F.2d 1068, 1072 (1st Cir.1980)).

2028; (2) promulgate new regulations for the American lobster and Jonah crab fisheries consistent with the Marine Mammal Protection Act of 1972 (16 U.S.C. 1361 et seq.) and the Endangered Species Act of 1973 (16 U.S.C. 1531 et seq.) that take effect by December 31, 2028, utilizing existing and innovative gear technologies, as appropriate; and (3) in consultation with affected States, submit an annual report to Congress on the status of North Atlantic Right Whales, the actions taken and plans to implement measures expected to not exceed Potential Biological Removal by December 31, 2028, the amount of serious injury and mortality by fishery and country, and the proportion of the American lobster and Jonah crab fisheries that have transitioned to innovative gear technologies that reduce harm to the North Atlantic Right Whale.

CAA §101(b) provides:

EXCEPTION.—The provisions of subsection (a) shall not apply to an existing emergency rule, or any action taken to extend or make final an emergency rule that is in place on the date of enactment of this Act, affecting lobster and Jonah crab.

## STANDARD OF REVIEW

In addition to actual success on the merits, a plaintiff seeking a permanent injunction must establish: (1) irreparable harm; (2) the absence of an adequate remedy at law; (3) a balance of hardship favoring the plaintiff; and (4) an absence of detriment to the public interest. *Reid v. Donelan*, 2 F. Supp. 3d 38, 43 (D. Mass. 2014) (citing *Esso Standard Oil Co. v. Lopez–Freytes*, 522 F.3d 136, 148 (1st Cir.2008). "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court[.]" *eBay, Inc. v. MercExchange, LLC,* 547 U.S. 388, 391 (2006).

## ARGUMENT

### I.    MLA is Entitled to a Permanent Injunction

MLA's burden at trial is substantially similar to the burden it bore at the preliminary injunction hearing "with one important exception: the movant must show actual success on the merits of the claim, rather than a mere likelihood of such success." *K-Mart Corp. v. Oriental*

3

*Plaza, Inc.*, 875 F.2d 907, 914–15 (1st Cir. 1989) (quoting *Amoco Production Co. v. Village of Gambell,* 480 U.S. 531, 546 n. 12 (1987)). However, for a case like this, which revolves purely around a question of statutory interpretation, the burden for success on the merits is effectively the same: is MLA's interpretation of CAA §101(b) correct?

MLA's prior briefing already establishes why its interpretation is correct using basic tools of statutory interpretation and legislative history, and thus it meets this burden. MLA has also established irreparable harm from the violation of CAA § 101(b), it has shown that Defendants cannot be harmed by enjoining illegal actions, and that the public is benefitted from the same.[3] Finally, because sovereign immunity bars any recovery from Defendants for the financial harm they are imposing on MLA's members, they have no adequate remedy at law.[4] *Fishermen's Finest Inc. v. United States*, 59 F.4th 1269 (Fed. Cir. 2023) (holding that fishermen licensed by the federal government to fish in federal waters have no Fifth Amendment property interest in their licenses and permits, nor any compensable property interest in using vessel to harvest and process fish in management areas).

MLA has met all elements necessary to warrant a permanent injunction and this Court should so grant. *Allstate Ins. Co. v. Fougere*, 581 F. Supp. 3d 307, 320 (D. Mass. 2022), *aff'd*, 79 F.4th 172 (1st Cir. 2023).

---

[3] Defendants' claim that Congress has a stated interest in protecting the whales is counterbalanced by Congress' stated intent of protecting the lobster industry from onerous regulation through 2028 and, regardless, the "the risk of future entanglement of whales in lobster fishing gear in general is uncertain" and "the risk of harm to the potentially entangled whales is even less because it is possible that an entangled whale will escape unscathed or be disentangled before suffering any injury." *Strahan v. Holmes*, 595 F. Supp. 2d 161, 165 (D. Mass. 2009) ("The hardship that would be imposed upon Holmes by an injunction, i.e. being prevented from pursuing his livelihood, far outweighs the relatively remote possibility of harm resulting from any future entanglements of whales in his fishing gear.").

[4] This Court is empowered to issue declaratory judgment on MLA's claims instead of injunctive relief following this consolidated trial on the merits, but, as that relief is effectively the same as a permanent injunction, it does not change that no other adequate remedy is available at law. *New England Tel. & Tel. Co. v. Int'l Bhd. of Elec. Workers, AFL-CIO*, 402 F. Supp. 1032, 1039 (D. Mass. 1975).

## II.    Defendants Are Not Entitled to *Chevron* Deference

In previous briefing, the parties did not extensively brief *Chevron* deference because both parties believe CAA §101(b) to be unambiguous but this Court raised additional questions at the March 7, 2024 hearing that bear response. MLA first notes that there is a high likelihood that *Chevron* deference will soon be a vestige of legal history based on the United States Supreme Court's upcoming decisions in *Relentless Inc. v. Department of Commerce*, S.Ct. Docket No. 22-1219 and *Loper Bright Enterprises v. Raimondo*, S.Ct. Docket No. 22-451. For now, though, *Chevron* deference is unwarranted because CAA § 101(b) does not delegate authority to NMFS to finalize new emergency rules, is not ambiguous, and even if it was, Defendants' interpretation is not reasonable.

> A. *Congress has spoken directly on the issue of NMFS promulgating emergency rules and was not ambiguous.*

Strictly speaking, *Chevron* deference does not come into play until the statute's language has been parsed, using "traditional tools of statutory construction, to determine whether it is unambiguous." *Duckworth v. Pratt & Whitney, Inc.*, 152 F.3d 1, 11 n. 6 (1st Cir. 1998) (quoting *Robinson v. Shell Oil Co.,* 519 U.S. 337 (1997). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which the language is used, and the broader context of the statute as a whole." *Id.* at 5 (quoting *Robinson v. Shell Oil Co.,* 519 U.S. 337 (1997)). At the first step of *Chevron* deference, this Court must "ask whether 'Congress has directly spoken to the precise question at issue.'" *Massachusetts Dep't of Telecommunications & Cable v. Fed. Commc'ns Comm'n*, 983 F.3d 28, 34 (1st Cir. 2020) (quoting *Succar v. Ashcroft*, 394 F.3d 8, 22 (1st Cir. 2005)).

Here, there can be no dispute that Congress has spoken directly to the question of whether NMFS can promulgate the Final Wedge Closure Rule. Congress limited NMFS from

passing any further restricting regulations on the lobster industry until 2028 except to finalize "emergency rules . . . *in place*" as of the CAA's enactment. CAA § 101(b) (emphasis added). So, Congress has spoken clearly and directly - NMFS cannot finalize an emergency rule unless that emergency rule was in place at the time of CAA's passage. There was no emergency rule in place. Therefore, the Final Wedge Closure Rule is illegal because "courts, as well as the agency 'must give effect to the unambiguously expressed intent of Congress.'" *Victim Rts. L. Ctr. v. Cardona*, 552 F. Supp. 3d 104, 128 (D. Mass. 2021) (Young, D.J.), *order clarified*, Civil Action No. 20-11104-WGY, 2021 WL 3516475 (D. Mass. Aug. 10, 2021) (quoting *Succar*, 394 F.3d at 22.).

Even if CAA § 101(b) was ambiguous on this point, NMFS's interpretation is not a reasonable one. *Saysana v. Gillen*, 590 F.3d 7, 16 (1st Cir. 2009). NMFS attempts to avoid CAA §101(b)'s clear language by arguing Congress intended something it neither wrote nor gave any legislative history to support: (1) it tries to redefine "emergency rule" to mean "emergency;" and (2) it tries to define "in place" beyond its reasonable meaning. Each of these is an unreasonable action taken by NMFS to try to twist the CAA into saying what it does not. This entitles Defendants to no *Chevron* deference. *Martinez v. R.I. Hous. & Mortg. Fin. Corp.*, 738 F.2d 21, 26 (1st Cir. 1984) (noting that "a rule out of harmony with the statute is a mere nullity").

B. *NMFS's interpretation of CAA § 101(b) is not reasonable and is entitled to no deference.*

i. <u>NMFS is not entitled to any deference for interpretations outside its expertise</u>.

The CAA delegates authority to NMFS to pass regulations to advance "existing…gear technologies" by 2028. CAA § 101(a). If NMFS was proposing a definition of "gear technologies," NMFS would have a more reasonable claim to *Chevron* deference. *NLRB v. Food*

*and Commercial Workers,* 484 U.S. 112, 121 (1987) (*Chevron* review of agency interpretations of statutes applies only to regulations "promulgated pursuant to congressional authority"). What CAA § 101(b) does not contain is a delegation of authority, implicit or explicit, for NMFS to determine what the definitions of "in place" or "emergency rule" are. *Adams Fruit Co. v. Barrett*, 494 U.S. 638, 649–50 (1990) ("A precondition to deference under *Chevron* is a congressional delegation of administrative authority"); *Smith v. Berryhill*, 139 S. Ct. 1765, 1778 (2019) ("*Chevron* deference "'is premised on the theory that a statute's ambiguity constitutes an implicit delegation from Congress to the agency to fill in the statutory gaps'") (quoting *King v. Burwell*, 135 S.Ct. 2480, 2488 (2015)).

NMFS is entitled to no deference where Congress has not delegated to NMFS discretionary power. Indeed, it would be rather bizarre for an agency to receive deference in its interpretation of a statute that disables rather than grants it rulemaking authority. *Bureau of Alcohol, Tobacco and Firearms v. FLRA,* 464 U.S. 89, 97 (1983) (refusing to sanction "'unauthorized assumption by an agency of major policy decisions'") (quoting *American Ship Building Co. v. NLRB,* 380 U.S. 300, 318 (1965)). Yet that is exactly what Congress has done here: removed NMFS's ability to regulate except by emergency rules in place at the time of the CAA's passage. CAA § 101(b). This Court should not find an implied Congressional grant of authority where Congress expressly takes said power away. *Gonzales v. Oregon*, 546 U.S. 243, 260–61 (2006) ("As explained below, the CSA's express limitations on the Attorney General's authority, and other indications from the statutory scheme, belie any notion that the Attorney General has been granted this implicit authority. Indeed, if "control" were given the expansive meaning required to sustain the Interpretive Rule, it would transform the carefully described

limits on the Attorney General's authority over registration and scheduling into mere suggestions").

NMFS has no expertise in determining the meaning of the words "emergency rule" or "in place," was granted no express or implied authority to interpret the same, and thus is entitled to no deference in its proffered interpretations. Further, its proffered interpretations are unreasonable and must be rejected by this Court.

ii.   <u>"Emergency rule" does not mean "emergency."</u>

"Emergency rule" is not synonymous with "emergency." If it was, then "rule" would be a meaningless, superfluous modifier, a construction this Court cannot condone. *Akebia Therapeutics, Inc. v. Azar*, 976 F.3d 86, 94 (1st Cir. 2020) ("Whenever feasible, courts ought to interpret statutory language in ways that avoid rendering specific words or phrases superfluous"). An emergency rule is a unique agency action that cannot take on the meaning of the specifically defined word "emergency." *See* EMERGENCY, Black's Law Dictionary (11th ed. 2019) ("A sudden and serious event or an unforeseen change in circumstances that calls for immediate action to avert, control, or remedy harm"). Therefore, by their very definitions, "emergency" and "emergency rule" have different meanings and NMFS's interpretation that they are synonymous is unreasonable and entitled to no deference.

Further, NMFS's interpretation that it can promulgate a final emergency rule because an emergency exists ignores "Congress' purpose in enacting the [CAA.]" *Duckworth*, 152 F.3d at 10. The CAA was Congress' affirmative action to "pause" a summary judgment ruling that constituted an "economic death sentence" to the lobster industry. 168 Cong. Rec. S9591, S9607–08 (daily ed. Dec. 20, 2022) (referencing technological advancements such as weak rope, weak links, rope marking, and a reduction in the amount of rope required per trap while making no

reference to any emergency rules); *see also Perez-Olivo v. Chavez*, 394 F.3d 45, 49–50 (1st Cir. 2005) ("After finding that the statute as a whole does not resolve the ambiguity, we next check the legislative history of the statute to confirm our conclusion") (citing *Summit Inv. & Dev. Corp. v. Leroux,* 69 F.3d 608, 610 (1st Cir. 1995)).

NMFS's interpretation – that Congress actually intended to allow it to further restrict the lobster industry – is not "in harmony with the [CAA]" and is therefore a "nullity." *Navarro v. Pfizer Corp.*, 261 F.3d 90, 99 (1st Cir. 2001) (citing *Martinez v. R.I. Hous. & Mortg. Fin. Corp.,* 738 F.2d 21, 26 (1st Cir. 1984)); *Gonzales*, 546 U.S. at 260–61. To allow NMFS to redefine "emergency" to mean "emergency rule" would grant NMFS an unlimited power to "rule by indefinite emergency edict [] leaving all of us with a shell of a democracy . . ." *Arizona v. Mayorkas*, 143 S. Ct. 1312, 1316, 216 L. Ed. 2d 452 (2023) (Gorsuch, J. Statement). It is an unreasonable interpretation entitled to no deference.

### iii.   A rule that has expired is not "in place."

Defendants would have this Court accept that a law that specifically restrained NMFS from further rulemaking except to make a temporary rule permanent, that actively constricted NMFS's ability to regulate the lobster industry, was in fact a blank check to "extend" an emergency rule that had expired eight months prior to the CAA's passage. This is patently unreasonable and entitled to no deference. *Gonzales*, 546 U.S. at 260–61.

As explained in MLA's memoranda, a regulation that has expired is not "in place." *Chea Taing v. Napolitano*, 567 F.3d 19, 27 (1st Cir. 2009) (using "in place" to mean regulations actually in effect); *Collins v. Yellen*, 141 S. Ct. 1761, 1774 (2021) (same).

Instead, a regulation is only "in place" if it is currently operative. *See Loving v. I.R.S.*, 742 F.3d 1013, 1016 (D.C. Cir. 2014) ("The IRS also filed a stay motion in this Court to keep the

regulations in place pending appeal"); *Young v. Antonelli*, 982 F.3d 914, 920 (4th Cir. 2020) ("We, therefore, conclude that *Burrage*'s statutory interpretation applies equally to § 2D1.1(a) of the Sentencing Guidelines in place prior to *Booker*"); *Allen v. D.C.*, 128 F. Supp. 3d 74, 81 (D.D.C. 2015) ("there was no cap in place on fees for administrative proceedings during that time"); *Braidwood Mgmt. Inc. v. Becerra*, 627 F. Supp. 3d 624, 634 (N.D. Tex. 2022) ("the preventive-care mandates, as a matter of statutory interpretation, apply only to ratings, recommendations, or guidelines in place at the time Congress passed the ACA"); *Borgess Med. Ctr. v. Sebelius*, 966 F. Supp. 2d 1, 7 (D.D.C. 2013), *aff'd sub nom. Borgess Med. Ctr. v. Burwell*, 843 F.3d 497 (D.C. Cir. 2016) ("Unfortunately for the plaintiffs, the statutes and regulations in place during the cost reporting years at issue did not permit a hospital seeking reimbursement to incur anything less than all, or substantially all, of the costs of the training in the nonhospital setting"); *Friends of Santa Clara River v. United States Army Corps of Engineers*, 887 F.3d 906, 911 (9th Cir. 2018) ("Until that applicability date, the agencies will administer the regulations in place prior to the 2015 Rule.") (internal quotations omitted); *Rush Univ. Med. Ctr. v. Burwell*, 763 F.3d 754, 756 (7th Cir. 2014) ("The IME regulation in place when the switch in reimbursement methodologies occurred was silent about whether pure research time was included within the definition of "non-patient care activities").

In fact, NMFS has already taken this exact position in previous litigation. *Starbound, LLC v. Gutierrez*, No. C07-0910-JCC, 2008 WL 1752219, at *4 (W.D. Wash. Apr. 15, 2008) (wherein NMFS affirmatively represented that an emergency rule's effect only lasts as long as specified in the rule itself). NMFS has not explained its change in position and is entitled to no deference for a newly advanced position, made just for this action, especially when it has failed to explain the change in position. *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016)

("When an agency changes its existing position . . . the agency must at least display awareness that it is changing position and show that there are good reasons for the new policy").

NMFS's proposed interpretation of "in place" is "entitled to respect only to the extent that the interpretation has the power to persuade." *Navarro*, 261 F.3d at 99 (citing *Mayburg v. Sec'y of HHS*, 740 F.2d 100, 106 (1st Cir.1984)). NMFS's interpretation is unpersuasive because it conflicts with the plain meaning of "in place" and is inconsistent with NMFS's own previous positions. Therefore, Defendants are entitled to no *Chevron* deference.

## **CONCLUSION**

The Consolidated Appropriations Act, 2023, Section 101(b) stops NMFS from implementing any new regulation except for finalizing an emergency rule "in place" at the time of the CAA's passage. CAA § 101(b) speaks clearly on this issue and, even if it were ambiguous, NMFS's interpretation of it to allow promulgation of final emergency rule, even after the underlying emergency rule has long expired, is patently unreasonable in light of the CAA's goal of restricting NMFS's rulemaking authority. *Chevron* deference is not warranted here; NMFS's Final Wedge Closure Rule is illegal and thus MLA is entitled to a permanent injunction.

<div style="margin-left:50%">

Plaintiff Massachusetts Lobstermen's Association, Inc.

By its attorneys,

ECKLAND & BLANDO LLP

</div>

Dated: March 12, 2024

<div style="margin-left:50%">

/s/SAMUEL P. BLATCHLEY
Samuel P. Blatchley, Esq. (BBO #670232)
22 Boston Wharf Road, 7th Floor
Boston, MA 02210
(617) 217-6937
sblatchley@ecklandblando.com

</div>

Daniel J. Cragg, Esq.* (#MN38988)
Robert T. Dube Jr., Esq.* (#MN401597)
10 South Fifth St., Suite 800
Minneapolis, MN 55402
(612) 236-0160
dcragg@ecklandblando.com
rdube@ecklandblando.com
*Admitted *pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on March 12, 2024, I electronically filed the within document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/S/ SAMUEL P. BLATCHLEY
Samuel Blatchley, Esq.