UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASSACHUSETTS LOBSTERMEN'S ASSOCIATION, INC.<br><br>Plaintiff,<br><br>v.<br><br>GINA RAIMONDO, *in her official capacity as Secretary*, *et al.*,<br><br>Defendants. | Case No. 1:24-cv-10332 (WGY)<br><br>FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER FOR JUDGMENT |

The above-captioned matter came before the Honorable William G. Young, on March 14, 2024, pursuant to this Court's March 7, 2024 order consolidating Plaintiff Massachusetts Lobstermen's Association Inc.'s Motion for Temporary Restraining Order, Preliminary Injunction, and Administrative Stay into a trial on the merits of Counts I-III of Plaintiff's complaint, pursuant to Fed. R. Civ. P. 65(a)(2). Samuel P. Blatchley, Daniel J. Cragg, and Robert T. Dube Jr., Esqs. appeared on behalf of Plaintiff Massachusetts Lobstermen's Association Inc. Brett Grosko and Taylor Mayhall, Esqs. appeared on behalf of Defendants Gina Raimondo, National Oceanic and Atmospheric Administration, and National Marine Fisheries Service.

The Court, having reviewed all the filings, pleadings, hearing the arguments of counsel, and being fully apprised of the matters contained therein, makes the following:

**FINDINGS OF FACT**

1.      Plaintiff Massachusetts Lobstermen's Association, Inc. ("MLA") is a Massachusetts non-profit corporation that represents the interests of the Massachusetts lobster fishery, including through litigation against the state and federal government. MLA's members include lobstermen who fish in federal waters. MLA collects dues from its members to fund its operations.

1

2. Defendant National Marine Fisheries Service ("NMFS") is an agency within the National Oceanic and Atmospheric Administration Fisheries ("NOAA"). NFMS is the agency to which the Secretary of Commerce has delegated the authority to implement regulations regarding the Magnuson-Stevens Act, the Endangered Species Act, and the Marine Mammal Protection Act, as well as the Consolidated Appropriations Act, 2023, H.R. 2617 ("CAA").

3. Pursuant to this authority, NMFS promulgated the Atlantic Large Whale Take Reduction Plan ("ALWTRP") and a 2021 Biological Opinion, whose scientific underpinnings were based on the Decision Support Tool ("DST"), a statistical model developed by NMFS.

4. That 2021 Biological Opinion was initially ruled insufficient to meet the requirements of the Endangered Species Act by the United States District Court District of D.C. in *Ctr. for Biological Diversity v. Raimondo*, No. 18-112 (JEB) 2022 WL 2643535 (D.D.C. July 8, 2022) before being vacated as arbitrary and capricious by the D.C. Circuit in *Maine Lobstermen's Ass'n v. Nat'l Marine Fisheries Serv.*, 70 F.4th 582 (D.C. Cir. 2023).

5. The D.C. Circuit ruled that NMFS's scientific assumptions underpinning the DST "relie[d] upon worst-case modeling that is 'very likely' wrong, based upon assumptions [NMFS] concededly does not believe are accurate" and concluded that NMFS's "legal reasoning" was "not just wrong," but "egregiously wrong." *Id.*

6. On March 1, 2022, NMFS issued an "Emergency Closure for Lobster and Jonah Crab Trap/Pot Fishery Area Between Massachusetts Restricted Area and Massachusetts Restricted Area North for April 2022" ("2022 Wedge Closure") to close an area of federal waters colloquially known as the "Wedge." 87 FR 11590.

7. To support its 2022 Wedge Closure, NMFS used the DST to project potential Right Whale takes that would be averted by the 2022 Wedge Closure. 87 FR 11590.

8. The 2022 Wedge Closure lasted from April 1, 2022, to April 30, 2022, expiring on May 1, 2022. 87 FR 11590.

9. Following summary judgment in *Ctr. for Biological Diversity v. Raimondo*, No. 18-112 (JEB), Congress passed and President Joseph R. Biden signed the CAA on December 29, 2022.

10. CAA § 101(a) provides:

> IN GENERAL.—Notwithstanding any other provision of law except as provided in subsection (b), for the period beginning on the date of enactment of this Act and ending on December 31, 2028, the Final Rule amending the regulations implementing the Atlantic Large Whale Take Reduction Plan (86 Fed. Reg. 51970) shall be deemed sufficient to ensure that the continued Federal and State authorizations of the American lobster and Jonah crab fisheries are in full compliance with the Marine Mammal Protection Act of 1972 (16 U.S.C. 1361 et seq.) and the Endangered Species Act of 1973 (16 U.S.C. 1531 et seq.). The National Marine Fisheries Service shall— (1) throughout the period described in the preceding sentence, in consultation with affected States and fishing industry participants, promote the innovation and adoption of gear technologies in the fisheries described in the preceding sentence, in order to implement additional whale protection measures by December 31, 2028; (2) promulgate new regulations for the American lobster and Jonah crab fisheries consistent with the Marine Mammal Protection Act of 1972 (16 U.S.C. 1361 et seq.) and the Endangered Species Act of 1973 (16 U.S.C. 1531 et seq.) that take effect by December 31, 2028, utilizing existing and innovative gear technologies, as appropriate; and (3) in consultation with affected States, submit an annual report to Congress on the status of North Atlantic Right Whales, the actions taken and plans to implement measures expected to not exceed Potential Biological Removal by December 31, 2028, the amount of serious injury and mortality by fishery and country, and the proportion of the American lobster and Jonah crab fisheries that have transitioned to innovative gear technologies that reduce harm to the North Atlantic Right Whale.

11. CAA §101(b) provides:

> EXCEPTION.—The provisions of subsection (a) shall not apply to an existing emergency rule, or any action taken to extend or make final an emergency rule that is in place on the date of enactment of this Act, affecting lobster and Jonah crab.

12. The CAA does not identify any specific emergency rule in Section 101(b).

13.     The only legislative history for CAA §§ 101(a)-(b) was statements by Hon. Senator Angus King of Maine, who asserted that CAA § 101 was passed to pause the "economic death sentence" caused by *Ctr. for Biological Diversity v. Raimondo*, No. 18-112 (JEB). 168 Cong. Rec. S9591, S9607–08 (daily ed. Dec. 20, 2022). Sen. King did not reference any emergency rules in his statements. *Id.*

14.     NMFS did not promulgate any emergency rules regarding the Wedge after the 2022 Wedge Closure and before the enactment of the CAA.

15.     On January 31, 2023, after the passage of the CAA, NMFS announced at FR-230130-0030 that it would be initiating a new closure, titled "Emergency Closure for Trap/Pot Fisheries: Area Between Massachusetts State Waters and Federal Waters within the Massachusetts Restricted Area for February 1- April 30, 2023" to begin on February 1, 2023, and ending on April 30, 2023 ("2023 Wedge Closure").

16.     NMFS characterized the 2023 Wedge Closure as an "extension" of the 2022 Wedge Closure. 88 FR 7363.

17.     To support the 2023 Wedge Closure, NMFS once again relied on the DST to project potential Right Whale takes that would be averted by the 2022 Wedge Closure.

18.     The 2023 Wedge Closure expired on April 30, 2023.

19.     The 2023 Wedge Closure was challenged by MLA in *MLA v. Raimondo, et al.*, 1:23-cv-00293-JEB (D.D.C. 2023), that case was ultimately dismissed as moot once the 2023 Wedge Closure expired on April 30, 2023. *Id.* at Docket No. 39.

20.     On February 7, 2024, NMFS promulgated "Final Rule to Close the Wedge Area within the Massachusetts Restricted Area" ("Final Wedge Closure Rule"), which NMFS characterized as a finalization of the 2022 Wedge Closure.

21. NMFS once again relied on the DST to support the Final Wedge Closure Rule; the administrative record does not demonstrate that NMFS changed the DST in any way following the D.C. Circuit's mandate in *Maine Lobstermen's Ass'n.*, 70 F.4th 582.

22. The Final Wedge Closure Rule estimates a financial cost of $339,000 to $608,000, or $1.7 million to $3 million across 5 years, to lobster fishermen. 89 FR 8340.

23. MLA member Eric Meschino was intending to fish in the Wedge and was required to expend time and fuel to remove his gear in the Wedge following the Final Wedge Closure Rule. He will also lose out on potential revenue garnered from lobster fished in the Wedge. (Declaration of Eric Meschino.)

24. MLA will lose out on member fees caused by the financial burdens imposed by the Final Wedge Closure Rule. (Declaration of Beth Casoni; Declaration of Arthur Sawyer.)

## CONCLUSIONS OF LAW

1. A plaintiff seeking a permanent injunction must, in addition to actual success on the merits, satisfy a four-factor test to be granted such relief: (1) irreparable harm; (2) the absence of an adequate remedy at law; (3) a balance of hardship favoring the plaintiff; and (4) an absence of detriment to the public interest. *Reid v. Donelan*, 2 F. Supp. 3d 38, 43 (D. Mass. 2014).

2. The Administrative Procedures Act ("APA") governs judicial review of federal agency actions. 5 U.S.C. §§ 701-706.

3. Under the APA, courts "shall . . . hold unlawful and set aside agency action, findings, or conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or made "without observed of procedure required by law." Id. § 706(2)(A), (C), (D).

4.      The Consolidated Appropriations Act, 2023, Section 101(b) is not ambiguous, and therefore *Chevron* deference is not appropriate here. *Lovgren v. Locke*, 701 F.3d 5, 21 (1st Cir. 2012).

5.      CAA § 101(b) does not, by its express terms, refer to the 2022 Wedge Closure Rule and this Court will not read in such language. *Murphy v. Smith*, 138 S. Ct. 784, 787–88 (2018); *Harrison v. PPG Indus., Inc.*, 446 U.S. 578, 593, n. 10 (1980) ("But neither the language of the statute nor its legislative history supports either of these proposed readings of § [the statute]).

6.      Even if CAA §101(b) was ambiguous, deference to NMFS is not warranted here because NMFS's interpretation of CAA § 101(b) in unreasonable. *Lovgren v. Locke*, 701 F.3d 5, 30 (1st Cir. 2012). Congress specifically barred NMFS from passing new regulations to bring the lobster industry into compliance with the ESA and MMPA until 2028 and limited it to finalizing emergency rules in place at the CAA's enactment; no emergency rules were in place at the CAA's enactment so NMFS's interpretation that it enact the Final Wedge Closure Rule because the emergency continues is unreasonable.

7.      CAA § 101(b) does not permit NMFS to issue any new regulations to bring the lobster industry into compliance with the ESA or MMPA after the CAA's enactment.

8.      Thus, for a finalization of an emergency rule to be legal, that emergency rule must have been in place as of the CAA's enactment.

9.      The 2022 Wedge Closure ended on April 30, 2022, and could not be extended therefrom. Therefore, the 2022 Wedge Closure was not "in place" as of the CAA's enactment. *Starbound, LLC v. Gutierrez*, No. C07-0910-JCC, 2008 WL 1752219, at *4 (W.D. Wash. Apr. 15, 2008) (wherein NMFS affirmatively represented that an emergency rule's effect only lasts as long as specified in the rule itself).

10. The 2023 Wedge Closure was therefore not an extension of the 2022 Wedge Closure but a new regulation, and thus it was illegal under CAA § 101(b). *Bostock v. Clayton Cnty., Georgia*, 207 L. Ed. 2d 218 (2020) ("The people are entitled to rely on the law as written, without fearing that courts might disregard its plain terms based on some extratextual consideration.").

11. Even if the 2023 Wedge Closure was intended to be an extension of the 2022 Wedge Closure, NMFS did not follow its own procedures for extending an emergency rule. *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016) ("When an agency changes its existing position . . . the agency must at least display awareness that it is changing position and show that there are good reasons for the new policy."); *see e.g.*, "Fisheries Off West Coast States; Emergency Action to Temporarily Extend the Sablefish Primary Fishery Season." 86 FR 59873.

12. Because the 2022 Wedge Closure expired in 2022 and the 2023 Wedge Closure was illegal, NMFS cannot finalize either emergency rules into the Final Wedge Closure Rule.

13. Based on the evidence, MLA has standing to challenge the Final Wedge Closure Rule on behalf of its members, who themselves have standing to sue. *Davis v. Grimes*, 9 F.Supp.3d 12, 23 (D. Mass. 2014).

14. Because the Final Wedge Closure Rule is a final agency action, it is subject to challenge under the Administrative Procedures Act. *Berkshire Env't Action Team, Inc. v. Tennessee Gas Pipeline Co., LLC*, 851 F.3d 105, 111 (1st Cir. 2017) (citing *Bennett v. Spear,* 520 U.S. 154, 177–78 (1997)).

15. Thus, MLA has demonstrated success on the merits of its claim that the Final Wedge Closure Rule is illegal under CAA § 101(b) and is arbitrary and capricious under the Administrative Procedures Act.

16. Even if NMFS could enact the Final Wedge Closure Rule under CAA §101(b), the Final Wedge Closure Rule relies on NMFS's Diagnostic Support Tool, which itself relies on scientific assumptions ruled illegal by the D.C. Circuit in *Maine Lobstermen's Ass'n v. Nat'l Marine Fisheries Serv.*, 70 F.4th 582 (D.C. Cir. 2023).

17. Based on the evidence, NMFS has failed to demonstrate that it has cured the illegalities in the Diagnostic Support Tool.

18. Thus, MLA has demonstrated success on the merits of its claim that the Final Wedge Closure Rule is arbitrary and capricious under the Administrative Procedures Act.

*19.* Based on the evidence, MLA has demonstrated that CAA § 101(b) was enacted to protect the interests of the lobster industry and thus violations of that law constitute irreparable harm to MLA. *United States v. D'Annolfo*, 474 F. Supp. 220, 222 (D. Mass. 1979); *Long Term Care Pharm. All. v. Ferguson*, 260 F. Supp. 2d 282, 289 (D. Mass. 2003), overruled on other grounds by *Long Term Care Pharmacy All. v. Ferguson*, 362 F.3d 50, 54 (1st Cir. 2004).

20. Based on the evidence, MLA has further demonstrated that it and its members will suffer financial harm that is *per se* irreparable because of NMFS's sovereign immunity. *Fishermen's Finest Inc. v. United States*, 59 F.4th 1269 (Fed. Cir. 2023) (holding that fishermen licensed by the federal government to fish in federal waters have no Fifth Amendment property interest in their licenses and permits, nor any compensable property interest in using vessel to harvest and process fish in management areas.).

21. NMFS's own estimates conclude that the costs and lost revenue to lobstermen who fish in the Wedge due to the Final Wedge Closure Rule will be $1.7 million to $3 million across 5 years. 89 FR 8340.

22. Thus, based on the evidence, MLA has sufficiently established it will suffer irreparable harm without a permanent injunction. *Newell Co. v. Connolly*, 624 F.Supp. 126, 129 (D. Mass.

1985); *Hyde Park Partners v. Connolly*, 676 F.Supp. 391 (D. Mass. 1987); *Monahan v. Winn*, 276 F.Supp.2d 196, 212 (D. Mass. 2003).

23. Based on the evidence, MLA has no adequate remedy at law to stop the enforcement of an illegal regulation such as the Final Wedge Closure Rule because a damages remedy is unavailable. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

24. When an injunction is sought against the government, the balance of harms and public interest factors merge. *Massachusetts Fair Housing Center v. U.S. Dep't of Housing & Urban Development*, 496 F.Supp.3d 600, 611 (D. Mass. 2020).

25. Defendants will suffer no harm from having an illegal action enjoined. *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013); *R.I.L-R*, 80 F. Supp. 3d 164 (D.D.C. 2015) (citing *Rodriguez*); *Cigar Association of America v. City of Philadelphia*, 500 F.Supp.3d 428 (E.D. Pa. 2020) (same); *Mock v. Garland*, -- F.Supp.3d ---, 2023 WL 6457920 (N.D. Tex. 2023); *Air Products Blue Energy, LLC v. Livingston Parish Government*, 2022 WL 17904535 (M.D. La. 2022).

26. Similarly, the public is always benefitted by having illegal government actions enjoined. *We the People PAC v. Bellows*, 40 F.4th 1, 25 (1st Cir. 2022).

27. Based on the evidence, Defendants failed to demonstrate that any "take" under the Endangered Species Act or the Marine Mammal Protection Act will result from the Final Wedge Closure Rule being enjoined. *Strahan v. Holmes*, 595 F. Supp. 2d 161, 165–66 (D. Mass. 2009).

28. Regardless, the potential "take" of any one animal does not overcome Congress's clear policy position of protecting the lobster industry from further impositions until 2028.

29. Therefore, based on the evidence, there is no detriment to the public interest in enjoining the Final Wedge Closure Rule.

30. Accordingly, the Final Wedge Closure Rule is illegal and should be permanently enjoined.

## **ORDER**

1. Plaintiff Massachusetts Lobstermen's Association request for a permanent injunction enjoining the operation and enforcement of the Final Wedge Closure Rule is **GRANTED**.

2. Plaintiff Massachusetts Lobstermen's Association request for declaratory judgment that the Final Wedge Closure Rule is arbitrary, capricious, and illegal for violating the Consolidated Appropriations Act, 2023 is **GRANTED.**

3. Plaintiff Massachusetts Lobstermen's Association request for declaratory judgment that the Final Wedge Closure Rule is arbitrary, capricious, and illegal for failure to rely on the best available scientific and commercial data is **GRANTED.**

4. Judgment shall be entered forthwith in conformity with this memorandum.

BY THE COURT:

Dated: _____   _____
William G. Young
Senior United States District Judge
District of Massachusetts