UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                                )
MASSACHUSETTS LOBSTERMEN'S       )
ASSOCIATION, INC.,               )
                                )
               Plaintiffs,       )
                                )
          v.                     )
                                )
NATIONAL MARINE FISHERIES SERVICE, )      CIVIL ACTION
GINA RAIMONDO, in her official   )        No. 24-10332-WGY
capacity as Secretary of the     )
U.S. Department of Commerce,     )
JANET COIT, in her official      )
capacity as Assistant            )
Administrator of NOAA Fisheries, )
                                )
               Defendants.       )
_____)
```

YOUNG, D.J.                                    April 16, 2024

**MEMORANDUM OF DECISION**

## I.   PROCEDURAL HISTORY

The Plaintiff, the Massachusetts Lobstermen's Association,
Inc. ("the Lobstermen Association" or "the Lobstermen"), is a
Massachusetts nonprofit corporation "dedicated to the
preservation of a sustainable lobster resource."  Compl. ¶ 7,
ECF No. 1.  On February 9, 2024, the Lobstermen Association
filed this suit in federal court against the Fisheries Service
and its leadership (collectively, "the government").  See Compl.
The Lobstermen Association sought an injunction to prevent the
enforcement of the Final Wedge Closure Rule, a regulation

promulgated by the National Marine Fisheries Service ("Fisheries Service").  Id. ¶ 62.  The Lobstermen Association alleged various claims, including violations of the Consolidated Appropriations Act of 2023, H.R. 2617 ("CAA"), the Administrative Procedure Act, 5 U.S.C. §§ 701-706 ("APA"), the Marine Mammal Protection Act, 16 U.S.C. § 1361 et seq. ("MMPA"), the Endangered Species Act, 16 U.S.C. § 1531 ("ESA"), and the non-delegation and major questions doctrines.  Id. ¶¶ 76-119.

On the same day that the Lobstermen Association filed its complaint, they also filed a motion requesting a temporary restraining order, preliminary injunction, and administrative stay.  See Mot. Temp. Restraining Order, ECF No. 3 ("Mot. TRO"); see also Mem. Supp. Mot. Temp. Restraining Order, ECF No. 13 ("Mem. Supp. TRO").  The government opposed the motion for a temporary restraining order, preliminary injunction, and administrative stay on February 23, 2024.  See Opp'n Mot. Temp. Restraining Order, ECF No. 22 ("Opp'n TRO").  The Lobstermen Association replied to the government's opposition on February 27, 2024.  See Reply Opp'n Mot. Temp. Restraining Order, ECF No. 28 ("Reply Supp. TRO").

On March 7, 2024, this Court heard oral argument on the motion, and per Federal Rule of Civil Procedure 65(a)(2), the Court consolidated the motion into a trial on the merits.  See Electronic Clerk's Notes, ECF No. 51.  After the hearing, the

government filed a motion for partial summary judgment on the Lobstermen Association's first three claims, arguing that the Court's consolidation of the motion for a temporary restraining order and a trial on the merits was inappropriate as to the first three claims, and that instead, the Court ought review the claims under the posture of summary judgment.  See Def.'s Mot. Partial Summ. J. 1-2, ECF No. 53; see also Def.'s Mem. Supp. Partial Summ. J., ECF No. 54.  The motion also argued that the Lobstermen Association lacked standing to move for a preliminary injunction barring enforcement of the Final Wedge Closure Rule, alleging that the Lobstermen Association had not sufficiently demonstrated pending irreparable harm.  Id.  On March 14, 2024, the Court heard oral argument on the Lobstermen Association's first two counts, which allege violations of the CAA, as a trial on the merits, reviewing only the administrative record before it.  See Electronic Clerk's Notes, ECF No. 59.  After hearing arguments from both parties, the Court declared the Final Wedge Closure Rule void for failure to abide federal law.  Id.

## II.  FINDINGS OF FACT

### A.   THE NATIONAL MARINE FISHERIES SERVICE AND THE NORTH ATLANTIC RIGHT WHALE

The Fisheries Service is an agency department of the National Oceanic and Atmospheric Administration ("NOAA"), which is itself an agency department of the United States Department

of Commerce.  Compl. ¶¶ 17-19.  The Fisheries Service has the authority, as delegated by Congress, to implement regulations regarding the Magnuson Stevens Act, the ESA, and the MMPA.  Id. The MMPA was enacted in 1972 "to ensure that marine mammals are not 'permitted to diminish beyond the point at which they cease to be a significant functioning element in the ecosystem of which they are a part.'"  Opp'n TRO at 3 (quoting 16 U.S.C. § 1361(2)).  Under the MMPA, the Fisheries Service is required to "develop and implement a take reduction plan designed to assist in the recovery or prevent the depletion of" endangered marine mammals.  Id. (quoting 16 U.S.C. § 1387(f)).

The North Atlantic right whale is an endangered species protected by the MMPA.  Id. at 5.  The right whale population was approximately 356 whales as of 2022.  Id.  As an endangered species, the Fisheries Service is required to develop and implement a take reduction plan for the right whale under the MMPA.  Id.  Right whales can get tangled in fishing gear, including that of lobstermen, which can lead to the whale's death.  Id.  On September 17, 2021, the Fisheries Service issued a rule, known as the 2021 Take Reduction Plan Amendment Rule, which "changed the geographic scope of the existing seasonal Massachusetts Restricted Area."  Id.  Per the rule, lobstermen and other commercial fishermen are prevented from fishing, during certain seasons, in a designated area of Massachusetts

state waters, in order to protect right whales from becoming entangled in fishing gear.  Id. at 1.

**B.   THE 2022 EMERGENCY WEDGE CLOSURE**

On January 7, 2022, after the 2021 Take Reduction Plan Amendment Rule went into effect, the Massachusetts Division of Marine Fisheries ("state agency") notified the Fisheries Service that the two agencies' combined closures had "inadvertently left an unprotected wedge-shaped area" where right whales would be at risk.  Id. at 6.  Therefore, on March 1, 2022, the Fisheries Service announced an emergency rule for the month of April 2022 to close the unprotected wedge (the "2022 Emergency Wedge Closure").  Mem. Supp. TRO ¶ 27.  The Fisheries Service stated that the "effective dates" of the 2022 Emergency Wedge Closure would be April 1, 2022, through April 30, 2022.  Compl. ¶ 28.

**C.   THE CONSOLIDATED APPROPRIATIONS ACT OF 2023**

On December 29, 2022, President Biden signed the CAA.  Mem. Supp. TRO at 3.  The CAA mandated that the 2021 Take Reduction Plan Amendment Rule "shall be deemed sufficient to ensure that the continued Federal and State authorizations of the American lobster and Jonah crab fisheries are in full compliance" with the ESA and MMPA until December 31, 2028.  Id. ¶ 24 (quoting H.R. 2617-1632 § 101(a)).  The CAA also provided that this provision "shall not apply to an existing emergency rule, or any action taken to extend or make final an emergency rule that is

in place on the date of enactment of this Act, affecting lobster and Jonah crab."  Id. ¶ 26 (quoting H.R. 2617-1632 § 101(b)).

### D.   THE 2023 EMERGENCY WEDGE CLOSURE

On January 31, 2023, the Fisheries Service announced that it would be initiating a new wedge closure, titled the "Emergency Restricted Area for the Trap/Pot Fishery: Massachusetts Restricted Area Wedge" (the "2023 Wedge Closure"), from February 1, 2023, to April 30, 2023.  Compl., Dec. Beth Casoni (Ex. E), ECF No. 1-1.

The Lobstermen Association, which is a professional organization of Massachusetts lobster fishermen, filed suit in the District Court for the District of Columbia to enjoin the enforcement of the 2023 Wedge Closure on February 1, 2023, arguing that the new rule violated the CAA.  Opp'n TRO at 7-8. During a hearing on the Lobstermen Association's motion for a temporary restraining order, the government argued that although the 2022 Emergency Wedge Closure was, "by its terms . . . lifted at [the point of the enactment of the CAA]," the Fisheries Service did "not [need] to have continuity between the end of . . . the application of a rule and the extension of the rule." Transcript of 1:23-cv-00293-JEB, United States District Court for the District of Columbia (February 16, 2023) 11:10-17, ECF No. 29 ("Transcript DC 2023").  The court, though skeptical of

this argument,[1] denied the request for a TRO, "finding that [the Lobstermen] had failed to establish irreparable harm."  Opp'n TRO at 8.  After the 2023 Wedge Closure was lifted on May 1, 2023, the government moved to dismiss the case as moot, which the court granted.  Id.

### E.    THE FINAL WEDGE CLOSURE RULE

On September 18, 2023, the Fisheries Service announced it would be "finalizing" the emergency rule and issued the Final Wedge Closure Rule on February 6, 2024, with an effective date of March 8, 2024.  Mem. Supp. TRO at 6.  This suit followed.

## III. RULINGS OF LAW

The Lobstermen Association alleged two claims under the CAA: first, the Lobsterman claimed that the Final Wedge Closure Rule "violates the APA and CAA because it is not an extension of an emergency rule existing at the time of the CAA's passage"; and second, the Lobstermen Association claimed that "even if [the Fisheries Service] was allowed to promulgate the 2023 Wedge Closure as an 'extension' of the 2022 Wedge Closure, it had no right to expand the Wedge Closure beyond the 2022 boundaries

---

[1] See Transcript DC 2023 at 30:6-12 ("I think that the plaintiffs may well have a better argument on the merits than the government.  It's a close question and one that I probably need to think about more.  But in the time that I have had, I think that [Lobstermen Association's counsel] has probably got a better reading of the way -- a better interpretation of the exception.").

when 'finalizing' the rule." Compl. ¶¶ 76-86. As this Court rules here on the first issue, which is dispositive, the Court does not address the merits of the second.

### A.  STANDARD OF REVIEW

The APA governs judicial review of the Fisheries Service's decisions under the MMPA and CAA. 5 U.S.C. §§ 701-706; 16 U.S.C. § 1361; H.R. 2617. As relevant here, agency action can be overturned if the action is "not in accordance with law." 5 U.S.C. § 706(2)(A).

### B.  THE HEARING ON THE MERITS

Prior to discussing the merits of the Lobstermen's claims, the Court must make a brief comment on the procedural posture of this case. In its motion for partial summary judgment, the government "urge[d] the Court to clarify that the proceeding . . . is an Administrative Procedure Act ("APA") record review summary judgment proceeding, and not a 'trial on the merits' as that phrase is traditionally employed." Def.'s Mot. Partial Summ. J. 1-2.

At the commencement of the trial proceeding, government counsel appeared to be stalling for time. First, she stated (erroneously) that "Rule 65(a)(2) is not applicable to APA-based claims." Transcript of 1:24-cv-10332-WGY, United States District Court for the District of Massachusetts (March 14, 2024) 5:19-20, ECF No. 62. She went on to insist "We view this

as a summary judgment proceeding[2] . . . that would proceed . . . deferential to the agency."[3]

While the government is correct that the Court's trial on the merits was, in fact, a review of the record, with no discovery or factual disputes, the government's request that the Court categorize such a trial as a summary judgment hearing was misguided.  In addressing the Lobstermen's motion for a temporary restraining order and preliminary injunction through a trial on the merits, the Court fulfilled its duty to adjudicate the case swiftly out of respect for the Lobstermen's motion for immediate equitable relief.[4]  As the trial was cabined to a

---

[2] A summary judgment proceeding, of course, usually requires 21 days before an opposition is expected.  Local Rule 56.1.

[3] Deference to the agency's interpretation plays no part when dealing with a clear congressional command.

[4] The longer I serve, the more deeply I am convinced that **delay** is the bane of modern federal litigation.  Anything a judge can do to speed up the process is almost always an improvement in reaching out for justice.  Here are three techniques upon which I rely:

- Use Fed R. Civ. P. 65(a)(2) proactively.  See, e.g., Strickland v. United States, 652 F. Supp. 3d 594, 595 (W.D.N.C. 2023) (utilizing 65(a)(2) in the context of workplace harassment); Electronic Clerk's Notes, Desktop Metal, Inc. v. Markforged, Inc., No. 1:18-cv-10524-WGY (D. Mass. Apr. 12, 2018), ECF No. 28 (patent infringement); Littlefield v. United States Dep't of Interior, 199 F. Supp. 3d 391, 393 (D. Mass. 2016), aff'd sub nom. Littlefield v. Mashpee Wampanoag Indian Tribe, 951 F.3d 30 (1st Cir. 2020) (tribal lands); Brookridge Funding Corp. v. Aquamarine, Inc., 675 F. Supp. 2d 227, 230 (D. Mass. 2009) (secured transactions); Ophir v. City of Bos., 647 F. Supp. 2d 86, 88 (D. Mass. 2009) (environmental law); Nat'l

single legal issue, where the only dispute between the parties was one of statutory interpretation, there was no need for discovery or evidence of facts beyond the administrative record. The Court's "speedy" adjudication occurred at trial on the merits, not a summary judgment hearing.  This Court, like federal district courts around the country routinely acting in this fashion, simply consolidated the Lobstermen Association's equitable claims under the APA with trial in order to expedite case resolution.  See, e.g., N. B. v. United States, 552 F. Supp. 3d 387, 396-97 (E.D.N.Y. 2021); Southern Ute Indian Tribe v. U.S. Dep't of the Interior, No. 15-CV-01303-MSK, 2015 WL 3862534, at *3 (D. Colo. June 22, 2015); Mylan Pharms., Inc. v.

---

Amusements, Inc. v. Town of Dedham, 846 F. Supp. 1023, 1026 (D. Mass. 1994), aff'd, 43 F.3d 731 (1st Cir. 1995) (first amendment).

- Use the case stated procedure.  See, e.g., Doe v. Hopkinton Pub. Schs., 19 F.4th 493, 502 (1st Cir. 2021) (approving of the case stated procedure); Doe v. University of Mass., No. CV 23-12077-WGY, 2024 WL 1521758, at *1 (D. Mass. Apr. 9, 2024); Triumph Foods, LLC v. Campbell, No. CV 23-11671-WGY, 2024 WL 421994, at *5 (D. Mass. Feb. 5, 2024); Groden v. C. Carney Recycling Sols. U, LLC, No. CV 21-10208-WGY, 2023 WL 2607894, at *1 (D. Mass. Mar. 23, 2023), appeal dismissed, No. 23-1376, 2023 WL 7190707 (1st Cir. Aug. 29, 2023); Moitoso v. FMR LLC, 451 F. Supp. 3d 189, 198 (D. Mass. 2020); Nwaubani v. Grossman, 199 F. Supp. 3d 367, 376 (D. Mass. 2016), aff'd, No. 16-2105, 2017 WL 3973915 (1st Cir. June 21, 2017)
- Usually deny summary judgment where it will delay a prompt trial.  See Sellers v. Boston College, No. CV 22-10912-WGY, 2024 WL 1586755 (D. Mass. Apr. 11, 2024).  Trials are -- almost always -- better than summary judgment.

United States Food & Drug Admin., No. 1:14CV75, 2014 WL
12638023, at *3 (N.D.W. Va. June 16, 2014), rev'd on other
grounds, Mylan Pharms., Inc. v. U.S. Food & Drug Admin., 594 F.
App'x 791 (4th Cir. 2014); Chief Prob. Officers of Cal. v.
Shalala, No. C-95-4644 DLJ, 1996 WL 134890, at *6 (N.D. Cal.
Mar. 14, 1996), aff'd, 118 F.3d 1327 (9th Cir. 1997); cf. La
Plaza Def. League v. Kemp, 742 F. Supp. 792, 807 (S.D.N.Y. 1990)
(explaining in APA case that because the "Court has determined
that it was necessary to go beyond the written record," a
consolidated trial on the merits per Rule 65(a)(2) would not be
appropriate).

### C. ANALYSIS

#### 1. STANDING

In its partial motion for summary judgment, the government
alleged that the Lobstermen Association lacked standing to
challenge the Final Wedge Closure Rule, arguing both that the
Lobstermen Association had failed to demonstrate organizational
standing and that the declarations submitted by Lobstermen
members did "nothing further to establish an injury that is
'concrete and particularized' and 'actual or imminent.'"  Def.'s
Mem. Supp. Partial Summ. J. 12-14.

For an association suing on behalf of its members to
establish standing, it must demonstrate that "its members would
otherwise have standing to sue in their own right, the interests

at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  Friends of Earth v. Laidlaw Env't Servs. (TOC), LLC, 528 U.S. 167, 181 (2000); Maine People's All. v. Mallinckrodt, 471 F.3d 277, 283 (1st Cir. 2006).

"Article III confines the federal judicial power to the resolution of 'Cases' and 'Controversies.' For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case -- in other words, standing." TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021).  "[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief."  Id. (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).

To start, the Lobstermen Association has demonstrated that its members have a deeply "personal stake" in this case. TransUnion, 594 U.S. at 423.  It is obvious that any injury from a Fisheries Service regulation would be "caused by" the defendant here, the Fisheries Service, and that any such injury would likely be redressed by judicial relief, as injury caused by a federal regulation can only be prevented by judicial

action.  The Court, therefore, focuses on whether the Lobstermen have demonstrated a "concrete, particularized, and actual or imminent" injury.  Id. (citing Lujan, 504 U.S. at 560-61).

"Requiring a plaintiff to demonstrate a concrete and particularized injury caused by the defendant and redressable by the court ensures that federal courts decide only the rights of individuals," and that federal courts exercise "their proper function in a limited and separated government."  TransUnion LLC, 141 S. Ct. at 2203 (citations and quotations omitted). "Concreteness and particularity are two separate requirements." Lyman v. Baker, 954 F.3d 351, 360 (1st Cir. 2020) (citing Spokeo, Inc. v. Robins, 578 U.S. 330 (2016)).  An injury is "concrete" when it "actually exist[s]."  Id. (quotations omitted).  An injury is "particularized" when it "affect[s] the plaintiff in a personal and individual way," Lujan, 504 U.S. at 560 n.1, that goes beyond widely shared "generalized grievances about the conduct of government," Lyman, 954 F.3d at 361 (citing Becker v. Federal Election Comm'n, 230 F.3d 381, 390 (1st Cir. 2000)).

Here, the Lobstermen Association's members are lobster fishermen who fish in the state and federal waters off the coast of Massachusetts.  For at least some members, lobstering is their main source of income.  See Mem. Supp. TRO, Ex. 9, Dec. Eric Meschino, ECF No. 13-2.  The Lobstermen Association put

[13]

forward a signed declaration from a member stating that were the Final Wedge Closure Rule to be upheld, he would lose significant portions of his income.[5]  See id.  The government, in its motion for partial summary judgment, argues that because this member failed to collect and submit "concrete data, numbers, or business records to support his allegation," the Lobstermen Association failed to establish any injury that is not "conjectural or hypothetical."  Def.'s Mem. Supp. Partial Summ. J. 13.  Such data is not required to demonstrate standing; simply planning to fish in waters that would no longer be accessible is all that is required.  To a lobster fisherman who had planned to fish in the relevant waters, the closure of those waters is a concrete, particularized, and actual injury.[6]

As members of the Lobstermen Association have standing, the Lobstermen Association, as an association, has standing if "the interests at stake are germane to the organization's purpose,

---

[5] The Lobstermen Association need not put forth multiple declarations; it is enough for associational standing if just one member of the group has standing.  See Warth v. Seldin, 422 U.S. 490, 511 (1975); see also Consumer Fed'n of Am. v. Federal Commc'ns Comm'n, 348 F.3d 1009, 1012 (D.C. Cir. 2003).

[6] "When the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be averred (at the summary judgment stage) or proved (at the trial stage) in order to establish standing depends considerably upon whether the plaintiff is himself an object of the action (or forgone action) at issue.  If he is, there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it."  Lujan, 504 U.S. at 561–62.

and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Friends of Earth, 528 U.S. at 181.  The Lobstermen Association "exists to protect the lobsterman and advocate for the continued existence of the lobster industry."  Mem. Supp. TRO 9.  As the Final Wedge Closure Rule could be considered a threat to the lobster industry, the "interests at stake are germane to the organization's purpose."  Friends of Earth, 528 U.S. at 181.  As the relief requested is only injunctive in nature, there is no requirement that individual members of the Lobstermen Association participate in the lawsuit.[7]  Sexual Minorities

---

[7] The government argues that the Lobstermen Association lacks organizational standing both because: 1) one of the Lobstermen Association's stated purposes is to protect the right whale population, and that therefore the Final Wedge Closure Rule supports the organization's interests; and 2) the Lobstermen Association "provides no further explanation for how the organization itself has suffered a concrete and particularized injury."  Def.'s Mem. Supp. Partial Summ. J. 13-14.  As to the first claim, an organization can have many purposes, and when these purposes conflict, it is the organization that is empowered to decide which purpose is most aligned with the organization's interests; it is not up to the Court to decide.  See Building & Const. Trades Council of Buffalo, N.Y. & Vicinity v. Downtown Dev., Inc., 448 F.3d 138, 148-49 (2d Cir. 2006) (quoting Humane Soc'y of the United States v. Hodel, 840 F.2d 45 (D.C. Cir. 1988)); see also Presidio Golf Club v. National Park Serv., 155 F.3d 1153 (9th Cir. 1998).  As to the second, an organization need not demonstrate injury to the organization itself in order to have standing.  Instead, it may choose to file suit "as the representative of its members," as the Lobstermen Association chooses to do here.  See Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll., 600 U.S. 181, 199 (2023) (quoting Warth v. Seldin, 422 U.S. 490, 511 (1975)).

<u>Uganda</u> v. <u>Lively</u>, 960 F. Supp. 2d 304, 326 (D. Mass. 2013) (Ponsor, J.) (quoting <u>Pharm. Care Mgmt. Ass'n</u> v. <u>Rowe</u>, 429 F.3d 294, 307 (1st Cir. 2005)).  For the foregoing reasons, the Court determined that the Lobstermen Association had standing to bring this suit.

### 2. STATUTORY AUTHORITY UNDER THE CAA

Under the APA, a court must set aside agency actions, findings, and conclusions which are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  5 U.S.C. § 706(2)(B).  "[A]n order may not stand if the agency has misconceived the law."  <u>SEC</u> v. <u>Chenery Corp.</u>, 318 U.S. 80, 94 (1943).

The text of the relevant provisions of the CAA read:

(a)   IN GENERAL.—Notwithstanding any other provision of law except as provided in subsection (b), for the period beginning on the date of enactment of this Act and ending on December 31, 2028, the Final Rule amending the regulations implementing the Atlantic Large Whale Take Reduction Plan (86 Fed. Reg. 51970) shall be deemed sufficient to ensure that the continued Federal and State authorizations of the American lobster and Jonah crab fisheries are in full compliance with the Marine Mammal Protection Act of 1972 (16 U.S.C. 1361 et seq.) and the Endangered Species Act of 1973 (16 U.S.C. 1531 et seq.).

(b)   EXCEPTION.—The provisions of subsection (a) shall not apply to an existing emergency rule, or any action taken to extend or make final an emergency rule that is in place on the date of enactment of this Act, affecting lobster and Jonah crab.

H.R. 2617-1632 § 101(a)-(b).

Per the CAA, through December 2028, the Fisheries Service may only issue a new regulation if it is an extension or finalization of an emergency rule that was "in place" as of the CAA's date of enactment, December 29, 2022. Id. The government argued that the 2022 Emergency Wedge Closure was still "in place" on that date "because the regulatory gap in the [regulated waters] remained and [the Fisheries Service] retained emergency authority under the MMPA." Opp'n TRO 3. Under the MMPA, Section 118(g)(4), the Fisheries Service has the authority to "extend emergency regulations for an additional period of not more than 90 days or until reasons for the emergency no longer exist, whichever is earlier." 16 U.S.C.A. § 1387(g)(4). As the emergent situation requiring the Wedge Closure was seasonal, the government likened its extension of the 2022 Wedge Closure in 2023 to the extensions the Supreme Court upheld in HollyFrontier Cheyenne Refining, LLC v. Renewable Fuels Ass'n. See 141 S. Ct. 2172, 2177 (2021). In HollyFrontier, the Supreme Court stated that a federal agency may extend an exemption "even after some lapse," because an extension does not require "unbroken continuity." HollyFrontier, 141 S. Ct. at 2177. The Supreme Court noted, however, throughout its opinion that the context of the statute should be considered in determining Congress's intent. Id. at 2179. Here, the MMPA allows emergency regulations to remain in effect only "until the end of the

applicable commercial fishing season," thus suggesting that such a rule cannot be extended into a following year's fishing season.  16 U.S.C. § 1387(g)(3)(B).  Were the Fisheries Service able to extend emergency rules through multiple seasons, a rule such as this could, per the government's reading, be extended multiple years after the end of its original effective dates.[8] The Court therefore rejected this argument.

The government further argued that the terms "in place" and "in effect" have two different meanings; though the 2022 Emergency Wedge Closure was no longer "in effect" in December 2022, it was still "in place," as the Fisheries Service "never repealed" the rule, and therefore the Fisheries Service "retained emergency rulemaking authority to issue an extension." Opp'n TRO 14.

This Court determined that the government's argument regarding any difference between "in effect" and "in place" is a

---

[8] As the Lobstermen Association points out, such a reading also conflicts with the Fisheries Service's stated position in Starbound, LLC v. Gutierrez, wherein it argued that an emergency rule's "effect by law could only extend" within the season of its effective dates.  No. C07-0910-JCC, 2008 WL 1752219, at *4 (W.D. Wash. Apr. 15, 2008).  That case challenged an emergency rule promulgated under the Magnuson-Stevens Fishery Conservation and Management Act, 16 U.S.C. §§ 1801-1883, which, unlike the MMPA, lacks statutory language limiting emergency rules to the commercial fishing season.  If the Fisheries Service can read such a limit into the Magnuson-Stevens Fishery Conservation and Management Act, it cannot later refuse to recognize the same actual, textual limit in the MMPA.

distinction without a difference and is not supported by law, as courts consistently consider them synonymous.  See Peugh v. United States, 569 U.S. 530, 530 (2013) (using "in place" and "in effect" interchangeably); Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency, 535 U.S. 302, 311 (2002) (same); Neang Chea Taing v. Napolitano, 567 F.3d 19, 27 (1st Cir. 2009) (same); D.C. Ass'n of Chartered Pub. Sch. v. D.C., 930 F.3d 487, 493 (D.C. Cir. 2019) (same); Evan H., ex rel. Kosta H. v. Unionville-Chadds Ford Sch. Dist., No. CIV.A. 07-4990, 2008 WL 4791634, at *3 (E.D. Pa. Nov. 4, 2008) (same).  Though the government argued otherwise, a word does not gain special meaning simply because it arises in a statute's text.  Instead, "[i]t is a 'fundamental canon of statutory construction' that, 'unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning.'"  Sandifer v. United States Steel Corp., 571 U.S. 220, 227 (2014) (quoting Perrin v. United States, 444 U.S. 37, 42 (1979)).

Finally, the government argued that to read the CAA to exclude the 2022 Emergency Wedge Closure from the exception in § 101(b) would be to ignore "Congress's intent."  Opp'n TRO 15. As the 2022 Emergency Wedge Closure "is the only emergency rule 'affecting lobster and Jonah crab' that [the Fisheries Service] has issued in the last decade," the government argued that to rule the CAA's exception does not apply to the 2022 Emergency

[19]

Wedge Closure would be to render the subsection "entirely superfluous."  Id.  Neither the language of the statute, nor the legislative history of the CAA, however, support the government's reading.  See, e.g., Harrison v. PPG Indus., Inc., 446 U.S. 578, 593 n.10 (1980).  Instead, the text of § 101(b), as explained above, neither mentions the 2022 Wedge Closure nor can be read as applying to it.  Similarly, as the Lobstermen Association emphasized, the legislative history of the CAA does not support the government's position.  See 168 Cong. Rec. S9591-02, S9607-08 (daily ed. Dec. 20, 2022) (Senator Angus King specifically stating that the purpose of § 101(a)-(b) is to "pause the economic death sentence" caused by regulations of the Fisheries Service for lobstermen).

If these statutory arguments are not enough, the Lobstermen Association also argued that, as the government previously argued in the 2023 D.C. District Court litigation that any judicial review of the 2023 Wedge Closure was moot following the rule's expiration, the government cannot now reverse its position and argue that the 2022 Emergency Wedge Rule can still be extended or finalized.  See Compl. ¶¶ 57-58.  This Court, again, agrees.  In arguing the 2023 D.C. District Court case was moot, the government stated that "even if [the Fisheries Service] desired to extend the 2023 Wedge Closure in 2024, it would lack the legal authority to do so."  Massachusetts

Lobstermen's Ass'n, Inc. v. National Marine Fisheries Serv., No. CV 23-293 (JEB), 2023 WL 3231450, at *3 (D.D.C. May 3, 2023). Further, the Fisheries Service, in support of its mootness argument, provided "a declaration from its senior official in the Greater Atlantic Region affirming what the agency describes in its litigating papers: the agency will not issue another emergency rule." Id. These arguments by the Fisheries Service only further support the Lobstermen Association's argument. Were the Court to allow the Fisheries Service now to finalize the Wedge Closure, it would be explicitly endorsing the government's attempts to evade both judicial review and accountability from those who its policies most effect, lobstermen.

For all of these reasons, the Court ruled that the Final Wedge Closure Rule violates the explicit text of the CAA and therefore violates the APA.

### 3.  THE FINAL WEDGE CLOSURE RULE IS VOID

After making its determination, the Court declared the Final Wedge Closure Rule void and of no force and effect.  Out of respect for the executive branch, the Court chose not to enter a formal injunction, instead trusting the government to follow the law as it has now been interpreted.

After this declaration, the government questioned whether the Court would be making a finding as to the other elements

necessary for a permanent injunction.  The Court chose not to elaborate on such a finding at the time, but in the interest of completeness it does so here.

A plaintiff seeking a permanent injunction must, in addition to actual success on the merits, satisfy a four-factor test to be granted such relief: (1) irreparable harm; (2) the absence of an adequate remedy at law; (3) a balance of hardship favoring the plaintiff; and (4) an absence of detriment to the public interest.  Reid v. Donelan, 2 F. Supp. 3d 38, 43 (D. Mass. 2014) (Ponsor, J.).

Here, all four factors are met.  "The First Circuit has held that the first two factors are 'satisfied on a showing of substantial injury that is not accurately measurable or adequately compensable by money damages.'"  Donovan v. Philip Morris USA, Inc., 268 F.R.D. 1, 26 (D. Mass. 2010) (Gertner, J.) (quoting CoxCom, Inc. v. Chaffee, 536 F.3d 101, 112 (1st Cir. 2008)).  As a federal agency, the Fisheries Service holds sovereign immunity from compensable damages.  See Fishermen's Finest, Inc. v. United States, 59 F.4th 1269 (Fed. Cir. 2023). As members of the Lobstermen Association have established they would suffer financial injury were the Final Wedge Closure Rule upheld, and the Lobstermen Association and its members cannot be provided any non-equitable remedy, the first two factors are met.

As for the third and fourth factors, the Supreme Court has explained that when "Congress has spoken in the plainest of words, making it abundantly clear" what the public's priorities are, it is not the court's place to review such priorities. See Tennessee Valley Auth. v. Hill, 437 U.S. 153, 194 (1978).  As this Court noted at trial, when a regulation is contrary to an act of Congress, Congress **has** evaluated the public interests, and it is the agency's (and the court's) role to **obey** not to question Congress's determination.  Of course, an injunction does not always follow as matter of course from a Court's ruling that Congress has spoken to the merits of a claim; however, when a plaintiff lacks other remedies at law, injunctive relief is appropriate upon such a ruling.  See Weinberger v. Romero-Barcelo, 456 U.S. 305, 313-18 (1982).  Here, Congress, in passing the CAA, has balanced the hardships to lobster fishermen and the right whale population and has made the determination that, through December 31, 2028, the present lobstering regulations are sufficient.  In doing so, Congress is also presumed to have evaluated any detriment to the public interest that may follow from its actions.  This Court, in declaring the Final Wedge Closure Rule void, gives effect to Congress's conclusions.

## IV.   CONCLUSION

After careful consideration, the Court determined and therefore declared that the Final Wedge Closure Rule violates the Consolidated Appropriations Act of 2023, H.R. 2617, through December 31, 2028.  The Final Wedge Closure Rule is therefore void and unenforceable during that period.

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
JUDGE
of the
UNITED STATES[9]

---

[9] This is how my predecessor, Peleg Sprague (D. Mass. 1841-1865), would sign official documents.  Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 46 years.